**O'BRIEN v. JONES.   (No. 1290.)\***

(Court of Civil Appeals of Texas. El Paso March 9, 1922. Rehearing Denied April 6, 1922.)

1. **Frauds, statute of ⬖72(1)—Attaching deed to grantee's petition for breach of verbal contract to purchase interest in royalty held not to have the effect to charge contract subject to statute as to sale of realty.**

Where a deed of an interest in oil and gas and other minerals under land was attached to grantee's petition in an action for breach of a verbal contract whereby the petition alleged plaintiff agreed to sell and defendant agreed to purchase "one-half of the one-eighth royalty from the said land," and did not assert that the contract covered anything more, it did not have the effect of charging a contract for the whole of the interest conveyed, in absence of an allegation to that effect, and, so construing the petition to allege a contract to convey royalty, the statute relating to sales of real estate does not apply; royalty being personalty.

2. **Mines and minerals ⬖74 — Petition for breach of contract to purchase interest in royalty held not good on theory of fraudulent inducement to call off other contracts.**

A petition in an action for breach of contract to purchase interest in oil royalty is not good on the theory that defendant fraudulently induced plaintiff to call off contracts for the sale thereof to other parties, where no positive agreements with such parties are alleged.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by J. H. O'Brien against Morgan Jones. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

S. C. Padelford, of Fort Worth, and Cunningham & Oliver, of Abilene, for appellant.

Wagstaff & Wagstaff and H. N. Hickman, all of Abilene, for appellee.

HARPER, C. J. This is an appeal from a judgment sustaining general demurrer to the plaintiff's petition.

The plaintiff alleged that J. J. Hand owned a 644-acre tract of land; that he (Hand) executed and delivered to the T. & P. Coal & Oil Company three oil and gas leases on the east half thereof. These instruments are attached to the petition, show to be leases of the surface, with the right to prospect for minerals, with royalties, and are not conveyances of the minerals in place.

And to Wm. Bell an oil and gas lease to

the west half of said tract. This lease is attached to the petition, and reads:

* * * "Hereby grants, demises, and sells all the oil and gas in and under the land * * * and grants, demises, leases and lets said land itself unto the lessee," and retains royalties.

### Next it is alleged that—

"On or about the 15th day of January, 1919, the plaintiff, J. H. O'Brien, and the said J. J. Hand entered into and executed a written contract for the assignment and sale of an undivided one-half interest in and to the one-eighth royalty as shown by said leases."

This instrument is attached to the petition, and the portions thereof applicable to the points raised by the briefs we copy as follows:

"The state of Texas, county of Stephens.

"Know all men by these presents: that, I, J. J. Hand, of the county of Stephens, state of Texas, for and in consideration of the sum of thirty-three thousand eight hundred and ten dollars to me in hand paid by J. H. O'Brien, the receipt of which is hereby fully acknowledged and confessed, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said J. H. O'Brien of the county of Martin, state of Texas, all that certain and undivided one-half (½) interest in the oil and gas in, upon or under the land described below, to wit: [Describing land.]

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploiting said land for oil and gas and removing the same therefrom.

"Said land now being under lease for oil and gas executed in favor of Texas & Pacific Coal Company and William Bell & Co., and it is agreed and understood that this sale is made subject to the terms of said lease, but covers and includes one-half (½) of the oil and gas royalty and rentals due to be paid under the terms of the said lease.

"It is agreed and understood that one-half (½) of the money rentals which may be paid to extend the term in which a well may be begun under the terms of the said lease is to be paid to the said grantee and in event the above-described lease for any reason becomes canceled or forfeited then in that event an undivided ½ of the lease interest and all future rentals on said land for oil and gas privileges shall be owned by the said grantee, he owning one-half of all oil and gas in and under the said lands together with one-half interest in future rents.

"To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any manner belonging unto the said J. H. O'Brien and his heirs and assigns forever; and I do hereby bind myself and my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said J. H. O'Brien, and his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

"By the terms of which contract the plaintiff was to pay unto the said Hand the consideration of $33,810.00 in cash for said one-half interest of said one-eighth royalty as shown by said leases in and to the above-described 640 acres of land; that the said Hand thereby agreed with the plaintiff to furnish him an abstract of title covering the above land and oil and gas rights therein as soon as the same could be secured after the execution of the above-described contract, and to deliver said abstract complete to the plaintiff, and the plaintiff was to be allowed ten days from the reception of said abstract for the examination of the same; and if after the delivery and examination of said abstract, should the title to said land and oil and gas rights were shown to be good, the plaintiff was to pay unto the said Hand the sum of $33,810.00 for the above one-half interest in said royalty in said land, and that under said contract, and its extensions the plaintiff had until the 17th day of February, 1919, with which to pay unto the said Hand the sum of $33,810.00, and upon the payment of said sum on or before the 17th day of February, 1919, the said Hand was to assign, convey and transfer unto the plaintiff the said one-half interest in said one-eighth royalty, and that upon the payment of said amount by the plaintiff on or before February 17, 1919, the said conveyance and transfer was to be delivered unto the plaintiff." * * *

That the conveyance was delivered to the bank by Hand, and that plaintiff deposited with said bank $1,000 as a forfeit that he would carry out the agreement, on or before the 17th day of February, 1919.

It is then alleged that he had negotiated a sale of the one-half of the royalties provided for in the deed from Hand to other parties and then alleged:

"Plaintiff would further aver that, on or about the 15th day of February, 1919, the plaintiff and the defendant in the city of Fort Worth, Tex., made and entered into a contract by the terms of which the defendant, Morgan Jones, agreed, contracted, bound, and obligated himself unto the plaintiff to purchase said undivided one-half interest in said one-eighth royalty in and to the above-described 644 acres of land at and for the sum of $100 per acre, and that at said time the plaintiff informed the said Jones of the existence of the agreement between himself and the said Dodwell and the said Jackson as alleged above, and that at and before the said time the said Morgan Jones knew that the plaintiff could sell, and had valid and solvent propositions to sell and purchase, and could sell and obtain money from other parties for the said undivided one-half interest in said royalty to the amount of $100 per acre, and that the said Jones, the defendant herein, with said knowledge, then and there, on or about 14th day of February, 1919, obligated and contracted with the plaintiff that he would on the 17th day of February, 1919, at Ranger, Tex., in Eastland county, pay unto the plaintiff the sum of $100 per acre for said royalty, and stated and represented unto the plaintiff that he would meet him in the city of Ranger, Eastland county, on said day and date, which the defendant then and theretofore knew was the day that the plaintiff would and could exercise his option under his said contract with

the said Hand to purchase said interest in said royalty, and that, if the said defendant did not pay the said sum of $33,810 on said Hand contract on or before the said 17th day of February, 1919, plaintiff's said contract with said Hand would become forfeited, and become null and void."

That at defendant's request he called off the trades with other parties; that in accordance with the agreement plaintiff and defendant met in Ranger on the 17th day of February, for the purpose of closing the contract; that defendant fraudulently obtained plaintiff's contract with Hand from the bank, and, after having learned that plaintiff was to pay $33,810 for the royalty, then and there, with the fraudulent purpose of defeating plaintiff out of his profits, violated his contract, and failed and refused to pay plaintiff the $64,400, and thereby prevented plaintiff from meeting his obligation and to forfeit his contract with Hand, thereby causing plaintiff to lose $5,000, which he had contracted to pay Judge Swayne; also $1,000 forfeit and the profit he would have made by the sale.

The defendant filed general demurrer and set up statute of frauds. Plaintiff then filed supplemental petition, alleging that the contract related to personal property, or, if it be conceded that it related to real estate, that the defendant was estopped from pleading it by reason of fraud. It is agreed between the parties that the contract was not in writing.

[1] First, appellant insists that the petition sets up a good cause of action for breach of contract of sale of personal property, and that the statute of frauds does not apply. Appellee by counter proposition first contends that the contract pleaded was a verbal one for the sale of real estate, and for that reason within the statute of frauds, and in support of this proposition argues that by the deed from Hand to plaintiff, quoted above, the latter was to have an undivided one-half interest in and to oil and gas and other minerals under the said land, and that the assignment of rentals and royalties which went with it was merely incidental to the ownership of the minerals, and that this deed made a part of the petition covers the subject-matter about which the contract was made. This clearly states the interest conveyed to plaintiff, but plaintiff alleges that he contracted to sell and defendant agreed to purchase "one-half of the one-eighth royalty from the said land," and does not assert that the contract covered anything more. The fact that this deed was attached to the petition would not have the effect to charge a contract for the whole of the interest conveyed by it, in the absence of an allegation to that effect, so construing the petition to allege the contract to convey royalty, and royalty being personalty the statute of frauds does not apply. Bender v. Brooks, 103 Tex. 333, 127 S. W. 168, Ann. Cas. 1913A, 559; Hulse v. Hulse, 155 Ill. App. 343. We are therefore of the opinion that in those respects the petition states a good cause of action.

[2] Plaintiff next urges that the petition is good as against general demurrer upon the theory that defendant fraudulently induced him to call off contracts with other parties. The answer to this contention is that he has not alleged a positive agreement between himself and any other party of purchase and sale.

Believing that the petition states a good cause of action for breach of contract of sale, the cause is reversed and remanded.