ARRINGTON *v.* UNITED ROYALTY COMPANY.

4-3170

Opinion delivered November 27, 1933.

*Patterson & Patterson,* for appellant.
*Reynolds & Maze* and *Max G. Cohen,* for appellee.

BUTLER, J. This cause was submitted to the court below on an agreed statement of facts, which, necessary for an understanding of the issue presented, may be thus stated:

On the 26th day of February, 1920, J. R. Hudson, being then the owner of the southeast, northeast, section 14, township 10 south, range 24 west, in Johnson County, to secure a note of $1,000 of that date, due one year thereafter, executed, acknowledged and delivered to the Bank of Clarksville his mortgage (his wife joining therein) covering said lands, which mortgage was duly recorded.

On June 26, 1925, the said Hudson and wife, by their deed of that date, duly acknowledged, conveyed to Dan W. Johnson an undivided one-half interest in all the mineral in and under said lands. Three days later all of the parties to the above deed executed and delivered to the Empire Gas & Fuel Company a certain instrument in writing, called an "oil and gas lease," by which the parties do "grant, lease and let unto the lessee the land

hereinafter described, for the purpose of drilling, operating for and producing oil and gas.'' This lease was to remain in force for ten years or as long thereafter as oil and gas was produced in paying quantities. By § 3 of the lease it was provided that ''the lessee shall deliver to the credit of the lessor, free of cost, on the lease or into the pipe line with which it may connect its wells one-eighth part of the oil produced and saved,'' and by § 4, that the lessee shall pay to the lessor as royalty $200 per year for gas from each well,'' when gas is produced in paying quantities, while same is being sold and used off of the premises, and $75 as royalty per annum while gas is not sold or used off of the premises; and, by § 4, it was provided that the lessors were to be paid as royalty one-eighth of the market value of gas and vapors produced from any oil well and used in the manufacture of gasoline.

In July, 1925, Dan W. Johnson and wife executed a written instrument, called ''royalty conveyance,'' duly acknowledged to the United Royalty Company, for which they, for the express consideration of $1 and other valuable consideration, ''do hereby bargain, sell, grant, convey, transfer, assign and set over to second party (United Royalty Company), his heirs and assigns, an undivided one-half interest in and to the oil and gas royalty which is, or may hereafter be, reserved by said party of the first part (Johnson, or his assigns), exclusive of the oil and gas bonus and oil and gas rental money in and under the following described property.'' It was further stipulated that the grantee should not be a necessary party in the leasing of said land, and that it authorized the grantor, his heirs and assigns, to lease the land for oil and gas purposes.

On January 21, 1928, the Bank of Clarksville brought suit to foreclose its mortgage, naming J. R. Hudson and wife, Bessie, and Dan W. Johnson, L. H. King and Frank May (interest of the two last named is not set out) as the only defendants. The United Royalty Company was never a party to the suit, and was not represented. Judgment was duly obtained in said suit, the lands ordered sold, sale was made by virtue of said order under which appellee, Arrington, derived his claim of title.

No notations had been made of any payments on the debt due the Bank of Clarksville on the margin of the record of the mortgage securing same, as provided in Crawford & Moses' Digest, § 7382, and the debt and mortgage was barred by limitation.

Suit was filed by Carl Arrington in the Johnson Chancery Court to quiet his title and to cancel and remove as a cloud thereon the conveyance by Johnson and wife to the United Royalty Company. The United Royalty Company answered, first pleading the right to redeem and making tender of the sums paid by Arrington in procuring his title. Further answering, it set up the due date of the note from Hudson to the bank, the failure of the latter to make any notations of payment on the margin of the record, and alleged that the debt was barred by limitation, and that by reason thereof its title was prior and paramount to the title of Arrington.

On the pleadings and admitted facts, the court found the interest of the United Royalty Company in and to an undivided one-half interest in and to the oil and gas royalty to be prior and paramount to the title acquired by Carl Arrington, and, by its decree, quieted and confirmed the title of the United Royalty Company. Carl Arrington has appealed, and thus states his contention relative to the point in issue: "Is the interest which is referred to as a royalty interest, which passed to appellee under the royalty conveyance from Dan W. Johnson, an interest or estate in land, or is it personal property?" He contends that an answer to this question is necessary for the decision in the case; that this court should hold that it is personal property, and in that event he claims the statute of limitation would have no application.

On the part of the appellee, the contention is made that the question stated above was not raised, either in the pleadings or statement of facts, upon which the case was tried in the court below, but that the only defense presented in the lower court, and upon which the finding of the court and its decree was predicated, was the plea that the mortgage debt upon which appellant's title is founded was barred by limitation because of a failure to comply with the requirements of § 7382 of the Digest.

We are of the opinion that the contention of the appellee is not well taken, because the nature of his interest was necessary for a determination of his rights, and this question was sufficiently raised by the pleadings and evidence adduced. We therefore proceed to a determination of that question.

The appellant contends that the royalty interest conveyed by Dan W. Johnson to the appellee is personal property, and, to sustain this contention, cites and relies upon the case of *Curlee* v. *Anderson & Patterson,* decided by one of the Courts of Civil Appeals of Texas and reported in 235 S. W., at page 622. That case, and others from other Courts of Civil Appeals in Texas, support the contention made, namely, that a conveyance of an interest in royalty under an oil and gas lease does not convey an interest in the land effective against a subsequent purchaser on foreclosure. *O'Brien* v. *Jones,* (Tex. Civ. App.) 239 S. W. 1013; *Farmers' & Merchants' Bank of Ranger* v. *Tullos,* (Tex. Civ. App.) 211 S. W. 847. We have been referred to no case announcing this rule which has been decided by the Supreme Court of Texas, and there appears to be a diversity of opinion among the Courts of Civil Appeals in that State. A later case than those which support appellant's contention is that of *Taylor* v. *Higgins Oil & Fuel Co.,* decided by the Court of Civil Appeals of Texas, January 11, 1928, reported in 2 S. W. (2d) 288. In that case it is said: "It is also well settled that such leases create a severance of the estate in the surface from the estate in the oil and minerals, which may be owned in their entirety by different parties. It is also the law of this State that the royalty interest retained by the lessor under such leases, whether owned by the original lessor or his vendees, is an estate in the land to be held and sold only under the laws regulating the sale of land." (Citing *Hager* v. *Stakes,* 116 Tex. 453, 294 S. W. 842.

The appellant contends that the rule announced in the Curlee case, *supra,* is supported by the weight of authority, and relies upon the cases of *Miller* v. *Sooy,* 120 Kan. 81, 242 Pac. 140; *Bellcourt* v. *Harrison,* 123 Kan. 310, 255 Pac. 52; *Walla Oil Co.* v. *Valentine,* 103 Wash. 359, 174 Pac. 980; and *Merredith* v. *Merredith,* 193 Ky.

192, 235 S. W. 757. We have examined these cases, and have reached the conclusion that they do not support the rule contended for, but rather hold to the contrary view. The case of *Merredith* v. *Merredith, supra,* merely held that, while neither a life tenant, nor the remainderman, acting alone, has power to make a valid lease of land for oil and gas production, they may jointly execute such an agreement among themselves on an apportionment of the profits, and, in the absence of an agreement between them, when the lease is jointly executed, as to what disposition shall be made of the income from the royalties, that the same will go to the life tenant and the corpus after his death to the remaindermen.

The case of *Walla Oil Co.* v. *Valentine, supra,* decided by the Supreme Court of the State of Washington, held that an ordinary oil and gas lease permitting the lessee to prospect for oil and gas establishes a mere chattel interest and not within any rule against conveyance of land except by writing and the real beneficial owner of the property right might be shown by parol. This case does not discuss the character of the estate in the owner of the royalty.

There seems to be some confusion in the decisions in failing to distinguish between accrued and unaccrued royalties, but it is clear from all of the decisions that ordinarily accrued royalties, strictly speaking, are a mere chose in action and therefore personal property. But, according to Mills-Willingham on the Law of Oil & Gas, page 179, unaccrued royalties are a part of the estate remaining in the lessor, and as such pass to the heirs, and are therefore an interest in land. It seems also that whether the royalty, when severed from the reversion, is to be deemed real or personal property depends upon the duration of the lease. If the oil and gas lease is for a term of years expiring at a certain time, it is a chattel real, and the severed royalty would be personal property; but where the lease may endure for an indeterminate period, it creates an estate in the nature of a qualified fee, and the royalty reserved would be an interest in realty.

We have held that leases given for a definite period in which exploration and discovery of the mineral might be made, to continue as long thereafter as oil and gas is produced, conveys not merely a license but an interest and easement in the land itself. *Standard Oil Co.* v. *Oil Waste Salvage Co.,* 170 Ark. 729, 281 S. W. 360; *Clark* v. *Dennis,* 172 Ark. 1096, 291 S. W. 807; *Henry* v. *Gulf Refining Co.,* 176 Ark. 133, 2 S. W. (2d) 687; and *Henry* v. *Gulf Refining Co.,* 179 Ark. 138, 15 S. W. (2d) 979. As a consequence of this rule, our court has held that an attempted conveyance of the royalty reserved by parol is void, this, of course, being on the theory that the royalty was an interest in real estate.

In *Allen* v. *Thompson,* 169 Ark. 169, 273 S. W. 396, where it was contended that the owner of a royalty had conveyed half the interest therein which was attempted to be evidenced by a notation on a check given for the purchase price, the court said: "The check was not in substance or form a contract between the parties. It was merely an evidence of the payment of the sum named therein for the royalties expressed in the two deeds. * * * The contract, if any, between the parties was oral and not enforcible as being within the statute of frauds." That a royalty is an interest in land and therefore a conveyance of it by parol is ineffective as within the statute of frauds seems to be the conclusion reached in *Brown* v. *Brown,* 33 N. J. Eq. 650; *King* v. *Kaiser,* 23 N. Y. Supp. 21, 52 N. Y. St. Reports, 281; and *State* v. *Royal Mineral Ass'n,* 132 Minn. 232. In the last-named case the court treated royalties as in the nature of a rent charge, and said: "Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. (Citing cases.) They pass with a sale or devise of the land. (Citing cases.) If transferred apart from the land, the provision of the statute of frauds relating to sales of land applies. (Citing cases.) In fact, although separable from the reversion, they are, until such separation, part of the land. (Citing cases.) 'For what is the land but the profits thereof?' "

In Mills-Willingham Law of Oil & Gas, after stating the general rule that royalties are to be treated as an

interest in real estate, at page 180, referring to the Texas cases holding to the contrary, it is said: "In Texas, notwithstanding that the royalty is treated as rents and not purchase price, several decisions by commissioners and the courts of civil appeals have treated the royalty as personal property. The position is indefensible in view of the fact that the lease is held to be a fee because of indefinite duration. The royalty has the same theoretical duration as the lease. It would seem that in Texas, where the lessor is held to have no reversion, the courts will ultimately recognize the royalty as a ground rent reserved in fee."

In the case of *Green* v. *Biddle*, 8 Wheat. 76, the following statement is found: "We are clearly of the opinion that the grant of one-half of the royalties, rents and income from the oil is a grant of one-half of the oil in place." This rule seems to have been in the mind of the court in its holding in the case of *Allen* v. *Thompson, supra*, and we now announce the rule to be that royalties in gas or oil, until brought to the surface and reduced to possession, are interests in real estate and not personal property.

It seems to have been conceded that the interest in the royalty acquired by Dan W. Johnson by virtue of the conveyance from J. R. Hudson, the owner of the land, was an interest in land, but the contention is made that, when Johnson conveyed to appellee one-half of his interest in the oil and gas royalties, the character of the property conveyed became changed from an interest in real estate to personal property. We can see no just reason for this contention. The language in the granting clause of the instrument named "royalty conveyance" from Johnson and wife to the appellee is as follows: "Do hereby bargain, sell, grant, convey, transfer, assign and set over to the second party (appellee), his heirs and assigns, an undivided one-half interest in and to the oil and gas royalty, which is, or may hereafter be, reserved by said party of the first part (exclusive of the oil and gas bonus and oil and gas rental money) in and under the following described property." This was effective to convey to the grantee precisely the same character of estate as was in

the grantor, which is not altered by the stipulation that the grantee should not be a necessary party in the leasing of the land, or that it authorized the grantor to execute such leases. *Cheatham* v. *Beck,* 96 Ark. 230, 131 S. W. 699; *Deming Investment Co.* v. *Bank of Judsonia,* 170 Ark. 65, 278 S. W. 634; Hughes on Arkansas Mortgages, § 475; *Dunlap* v. *Jackson,* 92 Okla. 246, 219 Pac. 314.

It follows, under the authority of *Dunn* v. *Smith,* (Tex. Civ.) 23 S. W. 449; *Bank of Mulberry* v. *Sprague,* 185 Ark. 410, 47 S. W. (2d) 601; and *Connerly* v. *Hoffman,* 184 Ark. 497, 42 S. W. (2d) 985, that the appellee, not having been made a party to the foreclosure proceeding under which appellant claims, may invoke the statute of limitation, and, as it is conceded that as to third parties the debt was barred for failure to comply with the provisions of § 7382 of the Digest, the court correctly held that appellee's title was prior and paramount to that of the appellant, and its decree is therefore affirmed.