MERRILL ENGINEERING Co. *v.* CAPITAL NAT. BANK OF JACKSON *et al.*

(In Banc. Jan. 26, 1942.

[5 So. (2d) 666. No. 34800.]

380

Harold Cox, of Jackson, for appellant.

Morse, Macon & Shands, Barron C. Ricketts, and Sherwood Wise, all of Jackson, for appellees.

**McGehee, J.,** delivered the opinion of the court.

The question involved on this appeal is whether the sale of a tract of land in a city subdivision which has been leased to be drilled for oil and gas has the effect of passing to the grantee the one-eighth unaccrued royalty theretofore reserved by the grantor under an oil and gas lease thereon, where such royalty is derived from a producing gas well located on an entirely different tract in close proximity thereto, and the royalties on both tracts have been pooled or consolidated along with the royalties reserved by the grantors in other leases on adjacent tracts under and by virtue of a written agreement among the respective owners of the fee in the several tracts for them to be developed as a unit under the facts and circumstances hereinafter mentioned.

During the month of April of the year 1930, F. A. Johnson et al., as owners of Blocks "V" and "W" of the Millsaps College Addition to the City of Jackson, executed an oil and gas lease thereon in favor of the Oil & Gas Corporation of Mississippi, which required the lessee to drill for oil and gas thereon within a period of one year,

the lease to remain in force for a period of five years from date, and as long thereafter as oil or gas or either of them shall be produced, a one-eighth royalty being reserved to the lessors. A similar lease was executed in favor of the same lessee by certain other persons as owners of Blocks "L" and "M" of the Howie-Roell Resurvey of the said Millsaps College Addition to the City of Jackson; likewise, by the owners respectively of Blocks "H," "N," "O" and "P" of the said Howie-Roell Resurvey, and all of which several separate leases were thereupon duly recorded.

On the 19th of December, 1930, the several lessors in the leases hereinbefore mentioned entered into a written agreement among themselves, reciting the execution of such several leases, describing the land involved, and providing that "Whereas it is desired by each of the lessors that their royalties of one-eighth interest reserved in the several leases above mentioned shall be consolidated and pooled so that such well or wells as may be drilled upon any of the above mentioned properties for gas or oil shall be divided among the several lessors according to the proportionate area of each of their several plots of land;" that therefore, in consideration of the mutual benefits to accrue thereunder, it was mutually agreed that the interest of the several lessors respectively, naming them, should be a certain amount, stating the same. This community agreement among these several lessors then takes cognizance of an assignment of their several leases by the Oil & Gas Corporation of Mississippi to the Love Petroleum Corporation, then about to be entered into, wherein the assignee obligated itself to drill only two gas or oil wells on all of the several blocks of land as an entirety, within eight months from that date, and agreed that such action on the part of the Love Petroleum Corporation shall constitute a compliance with the several provisions contained in their original leases to the said Oil and Gas Corporation. In other words, it was agreed that instead of the original lessee being required to drill

a well on the land covered by each lease, its assignee Love Petroleum Corporation should be required to drill only two wells on all of the several blocks when considered as a unit.

The agreement further provided for the conveyance to the Oil & Gas Corporation as trustee of that part of the land of any one owner which was selected as a well site. The size and value of any prospective well site was therein specified and agreed upon; and it was further provided that each of the parties to the agreement should contribute his proportionate part of the cost of purchasing the well site from its original owner. The well site was to be held in trust for the benefit of the parties to the agreement so long as oil or gas was produced therefrom.

As contemplated in the pooling or community agreement described above, the Oil & Gas Corporation of Mississippi assigned all five of the leases included in the pooling agreement to the Love Petroleum Company. Following this assignment, the Love Petroleum Company proceeded to drill a well upon Lot Six (6) of Block "M" of the Howie-Roell Resurvey. The well was successfully completed as a producer of natural gas. The gas produced from this well, which was known as the Love Petroleum-Homestead Development Well No. 1, was sold by the Love Petroleum Company to the United Gas Public Service Company under a gas purchase contract, dated January 31, 1931. This gas purchase contract was subsequently assigned, on September 25, 1937, by the United Gas Public Service Company to the United Gas Pipe Line Company, the original complainant by a bill of interpleader in the court below.

On January 22, 1931, F. A. Johnson and his co-owners of Blocks "V" and "W" sold and conveyed by a warranty deed all of the said Block "W" unto the appellant Merrill Engineering Company, "subject to the oil and gas lease given by the grantors to the Oil and Gas Corporation of Mississippi . . .," and the conveyance further provided that "all rights of every kind and char-

acter of said grantors in and to said lease are hereby conveyed to the grantee insofar as those rights pertain to the property hereby conveyed,'' the lease referred to in favor of the Oil and Gas Corporation having embraced both Blocks ''V'' and ''W'' as hereinbefore stated. No mention was made in this conveyance in regard to the pooling or community agreement theretofore entered into between the grantors in this deed and the lessors of the other blocks of land on which the royalties had been consolidated and pooled. Nor had the said agreement been placed of record at the time of the execution of this conveyance of Block ''W'' to the Merrill Engineering Company, but no point is made on this appeal in regard to whether or not the said grantee had actual notice of the existence of the said pooling or community agreement which was thereafter placed of record on June 1, 1931.

After acquiring the title of the said Block ''W,'' the Merrill Engineering Company executed a deed of trust thereon in favor of the Capital National Bank as security for a loan, wherein the said grantor conveyed to the trustee its rights in the lease executed by said F. A. Johnson, et al., to the Oil and Gas Corporation of Mississippi. This deed of trust was executed and recorded on March 31, 1931, also prior to the recordation of the said pooling or community agreement, but the deed of trust was thereafter renewed subsequent to the recordation of the said agreement and both deeds of trust were thereafter foreclosed by the trustee, when the land was purchased by the said Capital National Bank, but without any mention being made in the trustee's deed in regard to the oil and gas lease, agreement, or the royalties. We shall hereafter consider whether this fact becomes material, however, in the light of the rule that all unaccrued royalties in the minerals beneath the soil of the said Block ''W'' would have passed upon a conveyance of the land, as constituting an interest in realty, unless the same had been reserved; and will also then discuss the question of whether or not this rule may be applied as to the royalty

in the gas produced from Block "M" under the foregoing facts of this case and those to be hereinafter detailed.

The title acquired by the purchaser at the trustee's sale became ultimately vested in the appellee John Hart Lewis who is the present owner thereof.

As heretofore shown, prior to the execution of the said deeds of trust by the Merrill Engineering Company in favor of the said Capital National Bank, a producing gas well had been drilled on Lot 6 of Block "M" of the Howie-Roell Resurvey included in the said pooling or community agreement, and the title thereof was being held in trust for the benefit of all of the respective owners of the several tracts of land involved, and it appears that thereafter the United Gas Pipe Line Company had become the owner of the gas purchase contract by mesne assignments which entitle it to purchase the gas produced from the said well, subject to certain division orders showing the percentage of royalty to which each of the original lessors of the several blocks of land involved in the pool were entitled to receive, and showing that F. A. Johnson and his associates, as owners of Block "V," were entitled to receive 1455/100,000, and that the appellant Merrill Engineering Company, as owner of Block "W," was entitled to receive 1955/100,000 of the share of the royalty accruing in favor of the said Lots "V" and "W," as per written agreement entered into by them prior to the renewal of the said deed of trust in favor of the Capital National Bank on the said Block "W" by the Merrill Engineering Company.

A fund of $720.84 in royalties, representing the share of Block "W" under the pooling or community agreement, had accrued in the hands of the said United Gas Pipe Line Company up to the date of the filing of its bill of interpleader herein on October 10, 1940, and to which bill of interpleader the original owners of Block "W," F. A. Johnson, et al., and their grantee, The Merrill Engineering Company, and other subsequent owners, including the present owner John Hart Lewis, are made de-

fendants. The cause was heard upon the pleadings of the several parties and documentary evidence consisting of the written instruments hereinbefore mentioned. A final decree was rendered denying relief to F. A. Johnson and his associates on the ground that they had parted with title to the said Block "W" prior to the time within which any part of the said royalties had accrued from the well on Block "M," and allowing to the Merrill Engineering Company the portion of said fund representing the royalty which accrued from said well during its ownership of said Block "W," and likewise to the succeeding owners of said Block "W" such portion of said royalties as had accrued during their respective ownerships, and decreeing that the appellee John Hart Lewis was also entitled to such royalty as might likewise accrue in favor of the said Block "W" in the future. From this decree, the Merrill Engineering Company appeals, and assigns as error the failure of the court below to award the entire fund to appellant; that is to say, that the court should have held that the royalties thus earned from the gas well on Block "M," the title of which was in the trustee for the original lessors under the terms of the pooling or community agreement, did not pass to the appellees by the mesne conveyances of the title to Block "W" which was involved in said agreement, and that all of such fund belonged to appellant by virtue of a separate assignment thereof from the said F. A. Johnson, et al., as original owners and lessors of said Block "W," which was made subsequent to the execution of their warranty deed in its favor.

In passing upon this contention of the appellant, it should be observed that insofar as this record discloses, only one producing well was developed on the unitized area involved in the pooling or community agreement; that at the time the appellant executed the first deed of trust on Block "W," the assignee of the lease thereon, the Love Petroleum Company, still had the right to drill elsewhere on the pooled area for the second well and for

as many other wells as it deemed necessary for the proper development of the area for oil and gas, although not legally obligated by the said pooling or community agreement to drill more than one additional well; that the right to drill the additional well or wells was granted under the terms of the original leases assigned to it by the Oil & Gas Corporation and under the lease contract entered into between the said Oil & Gas Corporation and the said assignee, and into which lease assignment contract the pooling or community agreement had been expressly integrated by consent of all of the lessors, as shown by the said pooling or community agreement and recorded instrument executed between the said Oil & Gas Corporation and the Love Petroleum Company, describing all of the blocks of land involved in the pool, and which assignment was filed for record in the office of the chancery clerk on March 9, 1931, bearing the date of January 22, 1931, on which date the appellant acquired its title to the said Block ''W,'' with notice thereof insofar as we are advised by the pleadings and evidence; that the said Block ''W'' continued to be burdened and benefited with the rights and obligations of the assignee, Love Petroleum Company, which had been conferred by the several leases, pooling or community agreement, and the assignment; and that, moreover, the appellant expressly acquired under his warranty deed of this block of land from F. A. Johnson, et al., ''all of the rights of every kind and character of the said grantors in and to the said lease'' executed by them in favor of the Oil and Gas Corporation, and which was, as aforesaid, integrated into the pooling or community agreement and the assignment, with the full consent of his said grantors.

It should be further observed that the appellant, as owner of the said Block ''W,'' received its proportionate share of the one-eighth royalties derived from the producing well on Block ''M,'' as having accrued in favor of the said Block ''W'' by virtue of the pooling or community agreement and which accrued prior to December

26, 1936, as shown by the bill of interpleader and admitted by the answers; and that the decree appealed from awarded to the. appellant that portion of the fund paid into the registry of the court which accrued as the proportionate share of Block "W" in the royalties derived from the producing well on Block "M" between December 26, 1936, and July 21, 1937, when the said deeds of trust were foreclosed.

We are of the opinion that this award constituted the full measure of relief to which the appellant was entitled under the principles of law hereinafter stated.

If the royalties here in controversy had accrued from a producing well on Block "W," the case would present no difficulty for a holding to the effect that such royalties on the same as had not accrued at the time of the foreclosure of the said deeds of trust passed to the purchaser at the foreclosure sale as constituting an interest in the realty without regard as to whether or not they were mentioned in the trustee's deeds, since it is clear from the express language of the prior conveyances that they were intended to be granted by the former owners to the appellant, the Merrill Engineering Company, the grantor in the deeds of trust, and by such grantor to the trustee.

In the case of Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 38, the opinion in part reads: "In the case of Green v. Biddle, 8 Wheat. [1], 76, 5 L. Ed. 547, the following statement is found: 'We are clearly of the opinion that the grant of one-half of the royalties, rents and income from the oil is a grant of one-half of the oil in place.' " Moreover, it is well settled by the great weight of authority from other jurisdictions that until brought to the surface and reduced to possession, oil or gas constitute an interest in real estate and not personal property. United States v. Looney et ux., 5 Cir., 29 F. (2d). 884; Pugh et al. v. Commission of Internal Revenue, 5 Cir., 49 F. (2d) 76; Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 90 A. L. R. 765; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex.

160, 254 S. W. 290, 29 A. L. R. 566; Texas Co. v. Daugherty, 107 Tex. 226, 234, 176 S. W. 717, L. R. A. 1917F, 989; Jackson v. United Producers' Pipe Line Co. et al., Tex. Civ. App., 33 S. W. (2d) 540; Hager et al. v. Stakes, Tax Collector, et al., 116 Tex. 453, 294 S. W. 835; McIntire's Adm'r et al. v. Bond et al., 227 Ky. 607, 13 S. W. (2d) 772, 64 A. L. R. 630; Caudill Cole Co. v. Solner Mining Co., 198 Ky. 243, 248 S. W. 533; Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323; Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; 3 Summers, Oil and Gas (Perm. Ed.), Sec. 601; 1 Thornton's Law of Oil and Gas, Sec. 262; White v. McVey et al., 168 Okl. 19, 31 P. (2d) 850, 94 A. L. R. 656.

Our court sanctioned the rule announced in the foregoing decisions when it held in the case of Stokely v. State ex rel. Knox, Attorney-General, et al., 149 Miss. 435, 115 So. 563, in considering the nature and character of the estate conveyed by an oil and gas lease, that such an instrument was, in legal effect, a lease of the land and a conveyance of an interest therein. And likewise in the case of Stern et al. v. Great Southern Land Co., 148 Miss. 649, 114 So. 739, 740, it was said that "The deposits of clay, oil, and minerals under the surface of land, of themselves, constitute land, and are susceptible of separate ownership from the ownership of the surface of the land. Moss v. Jourdan, 129 Miss. 598, 92 So. 689." Nor is there aught to the contrary contained in the decision in the case of L. N. Dantzler Lumber Co. v. State, 97 Miss. 355, 53 So. 1, 2, wherein it was held that the word "lands" was used in a restricted sense in Section 211 of the Constitution of 1890 prohibiting the sale of sixteenth section lands, and meant "not the soil and everything above and below it, but simply the soil itself."

In 3 Summers, Oil and Gas (Perm. Ed.), Sec. 601, supra, and 1 Thornton's Law of Oil and Gas, Sec. 262, supra, the rule is announced that if the lessor in an oil and gas lease thereafter assigns or conveys a fee in the leased premises, without reserving the right to the

rent or royalty, then it will be payable to his assignee or grantee. In the case of White v. McVey et al., Okl., supra, it was held that oil and gas in place are minerals, and that so long as they remain unsevered from the soil, they are a part of the realty, that the execution of a real estate mortgage operates to fix a lien upon the oil and gas in place at the time of the execution of the mortgage, and that the title thereto would be absolute in the mortgagee from and after the date the mortgage was foreclosed by proper proceedings. This was true notwithstanding the fact that such oil and gas were not expressly conveyed by the mortgage and were subsequently assigned to a third party prior to the foreclosure. Therefore in the case at bar, the appellant, the Merrill Engineering Company, having acquired the royalty interest pertaining to Block "W" under his warranty deed to the fee from F. A. Johnson, et al., conveyed such royalty interest and merged the same with the greater interest in the fee simple title, when the fee simple title was mortgaged to the Capital National Bank, and the lien of the deed of trust in the instant case became a lien upon the entire interest, including the royalty, and a foreclosure of those liens on the land passed the royalty interest, along with the surface rights, without regard to whether or not the same were mentioned in the trustee's deed as hereinbefore stated, since they were not reserved from the fee sold.

Passing now to the question of what effect the pooling or community agreement had in vesting in the trustee the share of royalty in the gas produced from the well in Block, "M," which had been allocated therein to the said Block "W," it must be conceded that no precedent decision is to be found in our own jurisprudence for holding that such share in the royalties produced from a well on Block "M" would pass as a convenant running with the title of Block "W" to a subsequent grantee thereof. In Sec. 612 of 3 Summers on Oil and Gas (Perm. Ed.), it is said: "In the community oil and gas lease the owners of small contiguous tracts of land, usually town lots,

join in a lease of their lands which provides for the development and operation of the lands demised as a unit, and division of the royalties among the lessors on the basis of area or acreage. . . . Ordinarily under a community lease the question of sharing royalties is not raised for the simple reason that the lease expressly states they are to be shared on the basis of acreage without regard to which portion of the demised lands yield the oil or gas.'' The author then observes that it had been held in a case where the lease contained no expression as to the intent of the lessors in the event of the surrender of the non-productive lands of the lease, the absence of such expression of intent did not warrant the inference of an intent by the lessors to discontinue the sharing of royalties on the basis of ownership of the acreage described in the lease. Further, that ''purchasers of royalty interests from lessors who have executed community leases are bound by the provisions of such leases relative to the pooling of royalties and the development of the leased lands as a unit.''

This author then discusses three types of situations that may arise under a community lease, the third situation being where owners of land enter into the true community lease expressly providing for the sharing of royalties on the basis of area and for development of the· lease contract as a unit. He then states that the case of ''Thomas v. Ley [177 Okl. 150, 57 P. (2d) 1186], illustrates the third type of the situation mentioned above. There owners of town lots entered into a community lease providing for development of the lots as a single tract and for apportionment of the royalties on the basis of area. The plaintiffs· purchased royalty and fee interest in the lot upon which the well was actually drilled and sought· to exclude the purchasers of royalty and fee interest in other lots from participation in the royalties from this well. The court held, however, that since the plaintiffs had notice of the community lease, their purchases of royalty interests were subject to the interest of the other

lot owners or their assignees of the land or royalty interest. While the foregoing cases are limited to situations where the lessor has purported to convey a fractional interest in the mineral fee and royalties in a portion of the land covered by the lease, it seems too clear to admit of doubt that if a community lessor conveys a described portion of the land covered by the lease and subject to it, he conveys an undivided proportional interest in the oil and gas royalties under the entire tract covered by the lease.''

In Parker v. Parker, Tex. Civ. App., 144 S. W. (2d) 303, it was held that where owners of contiguous tracts orally agree to all execute a unitized lease before executing a written lease which described all the owners as ''lessor'' and obligated the lessee to pay cash consideration to the ''lessor'' on the basis that the tract was leased as a whole and pay the royalties to the said ''lessor'' in proportion that property belonging to each have to the entire tract, no matter in what part of the tract production was had, the lease was a unitized lease as a matter of law, and the owner of the individual tracts were entitled to share pro rata in royalties.

We are unable to conceive of any sound basis for a distinction between a case where the respective owners of several tracts of land join in a single lease for the purpose of having the whole area developed as a unit for oil and gas, with the right to share in the royalties according to the area of land owned by each, and a case where such owners have executed separate leases to the same lessee and thereafter enter into a pooling or community agreement for sharing the royalties on such basis from a well that may be produced anywhere on the pooled area.

In reaching this conclusion, we are not unmindful of the well-settled rule to the effect that where the owner of a tract of land leases the same as a whole for oil and gas and thereafter subdivides the land into several tracts and conveys the same without reserving the royalty interest therein, the purchasers of each of such several tracts will

only acquire the right to receive the royalty in any oil or gas produced from a well on his individual property. But, there is no lack of harmony between that principle of law and the doctrine which permits such respective landowners to supplant the effect of the original lease by entering into a pooling or community agreement with the consent of the lessee, whereby all of the several tracts may be developed as a unit with the right of the several owners to share in the royalties derived from any well or wells drilled anywhere on the pooled area.

It is urged by the appellant, however, that the pooling or community agreement in the case at bar was entered into for the sole benefit of the property owners therein mentioned, as parties to the contract, and that they intended that all benefits to be derived were to be personal to themselves, and not to any grantee of any block of the land involved. The original leases, however, the royalties from which were to be pooled, contain an express provision to the effect that ''If the estate of any party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns . . .'' But, aside from this provision, it was contemplated that each block of the land should continue to be drained of oil or gas through such well or wells as might be produced on any part of the area, and we are of the opinion that in the absence of a reservation to the contrary a subsequent grantee of any part of the pooled area would be entitled to the benefits to flow from the pooling or community agreement so long as it remained in force and effect against his land; and that this would be true without regard to whether or not such agreement made provision for the sharing of the royalties by anyone other than the original parties thereto.

Finally, it is contended that since a part of the said Block ''W'' was allowed to be sold to the City of Jackson for the unpaid taxes due thereon while the same was mort-

gaged to the Capital National Bank prior to the foreclosure of the deeds of trust in favor of the said bank, the tax sale had the effect of vesting in the said City of Jackson, as the immediate predecessor in title of the appellee, John Hart Lewis, a fee simple title to such part of the land free of the encumbrance of the said oil and gas lease and of all rights theretofore existing under the pooling or community agreement, citing the case of City of Jackson v. Ashley, 189 Miss. 818, 199 So. 91, which holds that where land is validly assessed as a whole for ad valorem taxes, a sale thereof operates to convey a fee simple title, clear of all prior liens and encumbrances of every character. However, in the case at bar, it is agreed that the oil and gas lease on all of the property as a whole involved in the pooling or community agreement was separately assessed and the taxes paid each year, although not separately as to each particular block of land described therein. At any rate, neither the City of Jackson nor its grantee, John Hart Lewis, have objected to the continuous draining of Block "W" by the community well on Block "M," nor have otherwise refused to be bound by the pooling or community agreement, they having at all times acquiesced in the same and now claim the same rights thereunder as were possessed by the original parties to the said agreement. Moreover, the appellant Merrill Engineering Company is not in position to consistently urge its own claim to the royalties involved in this suit as having accrued in favor of the said Block "W" subsequent to the tax sale thereof and at the same time assert that the effect of the tax sale was to withdraw the said block of land from the lease and pooling agreement and terminate all rights of the parties thereto. Conceding that the purchaser at the tax sale and its vendee were not bound by the pre-existing lease and pooling or community agreement and that they would not have been required to permit the tract of land which was sold for taxes to longer remain in the pooled area subject to the right of the oil and gas lessee to drill thereon, the

fact remains that they have each bound themselves by a judicial admission that said land should continue to be drained as a part of the pooled area by asserting their rights to the royalties accrued and to accrue in favor thereof in the oil and gas being produced from the community well. We know of no principle of law that would prevent a purchaser of land at a sale, such as would ordinarily terminate an unexpired lease thereon, from consenting to the continued operation of the lease by accepting the benefits of the rentals thereafter accruing therefrom.

No claim is made by any of the owners of the other blocks of land involved to any interest in the fund in question. On the contrary, they have acquiesced in the withholding of the said fund by the oil and gas purchaser to await a judicial determination of whether the fund belongs to the appellant alone or to the appellant and the appellees in accordance with the amount of the royalties which accrued during their respective ownerships, and as heretofore stated, we are of the opinion that the decree of the court below ordering a distribution of the fund on such basis should be affirmed.

Affirmed.