Wayne **MOORE** et al.

v.

**Ellis CAMPBELL, Jr., District Director of Internal Revenue.**

Civ. A. No. 3–797.

United States District Court
N. D. Texas,
Dallas Division.
Feb. 27, 1967.

B. L. Bird, Ft. Worth, Tex., of counsel: Weeks, Bird, Cannon & Appleman, Ft. Worth, Tex., for plaintiffs.

Melvin M. Diggs, U. S. Atty., Robert L. Waters, Atty., Tax Div., Dept. of Justice, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

ESTES, Chief Judge.

This is a suit for the recovery of $120,030.18, together with interest of $14,355.94, paid by plaintiff Wayne Moore and wife, Jo-Ann Moore, taxpayers, on April 13, 1963, for the year 1960, alleged to have been erroneously or illegally assessed and collected. The cause was tried before the court, sitting without a jury.

Wayne Moore (Moore) and his wife, Jo-Ann Moore, are residents of Midland, Midland County, Texas. For several years prior to 1958, Moore and W. H. Gilmore (Gilmore) had owned in fee simple some 7,700 acres of land in Pecos and Reeves Counties, Texas, in equal, undivided interests.

On February 17, 1958, Moore and Gilmore executed and delivered to Frank C. Ashby, who was their attorney, an oil and gas lease to all of the 7,700 acres of land. The lease described the grantee, Ashby, as "trustee," but the lease contained no other provision defining any trust relationship that was intended to exist. Ashby orally agreed, however, to hold the lease and all benefits arising thereunder for the equal benefit of Moore and Gilmore. On that same date, February 17, 1958, Moore executed two warranty deeds to W. B. Newkirk. Each of the warranty deeds conveyed an undivided one-fourth interest (surface and minerals) in and to the 7,700 acres of land, subject to the Ashby lease, to be held in trust for a minor daughter of Moore. Each warranty deed contained provisions establishing the terms upon which the property was to be held in trust for the benefit of Moore's daughters.

The Ashby lease was executed on a standard "Producers 88" form of lease. It had a primary term of 10 years from the date of execution and would remain in force "as long thereafter as oil, gas or other mineral is produced from said land hereunder." The paragraph of the form dealing with an obligation either to pay delay rentals or commence drilling operations was stricken out. Typewritten on the form was the following additional language: "This is a ten year paid lease and any reference herein to rentals or delay rentals shall be disregarded." It was understood by and between Moore, Gilmore and Ashby that all benefits under the lease were held for Moore and Gilmore, and Ashby was to deal with the lease only pursuant to the directions and with the agreement of Moore and Gilmore. In fact, the purpose of the lease to Ashby, Trustee was to separate the record (not the real, beneficial) title to the oil, gas and mineral leasehold estate—a determinable fee [1]—from the rec-

---

[1]. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R.; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Haby v. Stanolind Oil and Gas Co. (5 Cir., 1955), 228 F.2d 298, 305; 7 Tex.L.Rev. 1, 8; and when such lease is made to a trustee without disclosing the names of the beneficiaries, the trustee may assign to an innocent purchaser. Texas Trust Act § 8 (formerly Art. 7425a R.S.Tex.). Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488. In negotiating the "assignment" to Mobil, hereinafter discussed, Mobil was not an innocent purchaser from Moore and Gilmore but dealt with them as the real owners of the rights evidenced by the lease and the power to lease.

ord title to the surface and the remainder of the minerals, including the reversionary interest, so that the latter could be conveniently conveyed without conveying the leasehold, and to get the record, or apparent title, out of their names. Ashby was the *alter ego* or nominee of Moore and Gilmore.

Ashby, Trustee executed a document styled "Assignment of Oil and Gas Lease" ("assignment"), bearing date October 14, 1959, which recited that Ashby "does hereby bargain, sell, transfer, assign and convey all the rights, title and interest of the original lessee and present owner" [2] of the Ashby Lease to Socony Mobil Oil Company, Inc. (Mobil). There was reserved 1/32 overriding royalty and a production payment of $2,000 per acre payable out of 1/32 of production. Contemporaneously with the execution of the "assignment" from Ashby, Trustee to Mobil, a collateral letter agreement was entered into by and between Mobil and Ashby. (Stip.Ex.D) This collateral agreement specified that Mobil would reassign all rights acquired under the "assignment" or make an acreage selection out of the lands covered by the Ashby lease as to which the assignment would remain in force. Any acreage so selected would embrace a minimum of 3,840 acres in a contiguous area. When the acreage was so selected, Mobil would pay an additional consideration of $100 per acre for the acreage selected. Mobil agreed not to drill a test well prior to its acreage selection; and in the event no acreage was selected, Mobil agreed to hold in strict confidence all geophysical information secured as a result of work performed by it during the exploratory and selection period.

On November 18, 1959, Mobil paid Ashby, Trustee $57,500 by check delivered to Moore and Gilmore, and $28,750 was then deposited by each of them in their bank accounts. No amount ever went into an account for Ashby or for Ashby, Trustee. Moore was uncertain as to whether the check (not produced at the trial) was payable to Ashby, Trustee or to Ashby, Trustee and Moore and Gilmore, but he did testify that Ashby endorsed and delivered the check to Moore and Gilmore and they went to the bank and each deposited half to his account. On April 7, 1960, Mobil made its acreage selection and reassigned to Ashby, Trustee the rights under two sections of the 7,700 acres. Mobil paid Ashby by check $592,030 on April 15, 1960. This check from Mobil was delivered to and deposited by Moore and Gilmore as was done with respect to the $57,500 payment.

On June 1, 1960, Ashby executed documents transferring the overriding royalty reserved in the Mobil "assignment" to Gilmore and the production payment reserved in the Mobil "assignment" to Moore.

On April 17, 1959, Moore duly filed his 1958 gift tax return, reporting as a taxable gift to his daughters the transfers made by his warranty deed and trust agreements to Newkirk involving the 7,700 acres of land. The Internal Revenue Service notified Moore of its conclusions that the trust instruments were revocable,[3] and for that reason, no taxable gift had occurred.

2. Stephens County v. Mid-Kansas Oil & Gas Co., supra, 254 S.W. at 294, quotes approvingly Hardwicke's work on Innocent Purchaser of Oil and Gas Lease, at page 11: "From a practical standpoint, the rights of the lessee in an instrument using the language 'grant, sell and convey' are the same as if holding under an instrument using the language 'lease, demise and let.' In each instance the lessee is given the right to enter and develop and to appropriate the production, and this right terminates if not exercised within a stated period, or if consideration is not paid for delay in commencing operations, and at all events the right terminates at a definite time if production is not obtained in paying quantities. Whenever production is obtained in paying quantities, the right to develop and to produce continues as long as the mineral is produced in paying quantities.

"A lessee has no more privileges under one type of instrument than he has under the other." At 294.

3. The Internal Revenue Service reasoned that the trusts were revocable, because the trust instruments did not provide that they were irrevocable, and the Texas Trust Act, Article 7425b–41, states:

Some weeks prior to actual receipt of the Revenue Agent's report determining that no taxable gifts had been made, Moore was apprised that such a determination would be forthcoming. Having consulted with his attorney, Moore delivered a letter to Newkirk, the trustee, dated April 28, 1961, making demand for reconveyance of the trust properties. By letter dated May 9, 1961, Newkirk refused to make the reconveyance, and resigned. L. F. Mullins thereafter succeeded Newkirk as trustee of the two trusts. On May 24, 1961, Moore filed a trespass to try title suit to recover title and possession of the property conveyed by the trust instruments, Cause No. 6553, in the District Court of Reeves County, Texas, 143rd Judicial District. The trustee answered and cross-actioned for a declaratory judgment that the trust instruments were and had been from their inception irrevocable. On July 29, 1961, the matter came on for trial. Thereafter, the court entered a final judgment, denying the relief claimed by Moore, granting the relief prayed for by the Trustee, and declaring that the trusts were irrevocable. No appeal was taken from the judgment.

In the income tax return filed by Moore and wife for 1960, there was included the amount of $324,765, which was listed as proceeds from a sale of capital asset, being the total amount received by Moore from Mobil. The Internal Revenue Service determined a deficiency in tax of $120,030.18. Moore paid the tax and filed claim for a refund, claiming that: (1) the proceeds from the "assignment" to Mobil should be taxed as long-term capital gain to Moore and not as ordinary depletable income; (2) in such "assignment," Ashby, Trustee reserved the production payment for Moore and the overriding royalty for Gilmore, and there was no exchange of properties and no gains thereon, or if there were an exchange, the properties were of like kind; (3)

"Every trust shall be revocable by the trustor during his lifetime, unless expressly made irrevocable by the terms of the instrument creating the same or by a

the Newkirk trusts were irrevocable and income from such trusts should not be taxed to the trustor; and (4) $28,750 was erroneously included in the Moores' 1960 income when the same was received in 1959.

The Internal Revenue Service rejected the claim for refund and plaintiffs Moore brought this suit.

Plaintiff Moore contends that (1) the Ashby and Newkirk trusts were parts of one transaction, (2) the Ashby trust is a constructive or resulting trust to which the Texas Trust Act is not applicable, (3) the Newkirk trusts are irrevocable, (4) the Ashby lease is a capital asset for tax purposes, and (5) the "assignment" to Mobil is not a sublease for tax purposes.

### The Ashby and Newkirk Trusts as One Transaction

Plaintiff Moore argues that the Newkirk trusts and the Ashby trust were simply two parts of the same transaction, and since the provisions of the Texas Trust Act (in particular, § 41) did not apply to the Ashby trust, they did not apply either to the Newkirk trusts. With this I cannot agree. It is true that as far as Moore was concerned, the two were part of a single perfectly proper plan, viz., to divest himself of his half interest in the surface and underlying minerals by gifts in trust for his two daughters, retaining for himself, however, the oil, gas and mineral leasehold. Nevertheless, the lease to Ashby and the conveyances to Newkirk were separate and distinct, intended to take effect seriatim, so that the conveyances to Newkirk could refer to, and be made subject to, an existing lease to Ashby. It is stipulated in this proceeding that by virtue of the lease to Ashby

"Plaintiff Moore thereafter held record title to an undivided ½ interest in the surface estate, and an undivided ½ interest in the Lessor's mineral royalty interest in such land; and he also

supplement or amendment thereto." See Butler v. Shelton (Tex.Civ.App.1966), 408 S.W.2d 530.

owned the beneficial interest in an undivided ½ of the Ashby Trustee, lease."

Moore could have (as did Gilmore, the other lessor) made the lease to Ashby regardless of his intention as to the subsequent disposition of the surface and mineral interests. He could have changed his mind about the gifts to his daughters, or about the terms to be contained in the daughters' trusts, without thereby annulling the Ashby lease. However proximate in point of time the execution of the Ashby lease and the Newkirk trusts, and assuming that Moore would not have made the former except that it was to be followed by the latter, the two do not constitute "one transaction" in the sense that they must stand or fall together, or that the application of the Texas Trust Act to the Newkirk trusts was dependent upon its application to the Ashby lease, or that the revocation of the Newkirk trusts would necessarily have called for a similar revocation of the Ashby lease, as plaintiff argues. Gilmore was also a lessor in that lease, and Moore alone could not have "revoked" it.

### The Ashby Trust

■■ Having decided that the Ashby and Newkirk trusts were not two parts of the same transaction, the classification of the Ashby trust as constructive, resulting, or expressed and the applicability of the Texas Trust Act becomes immaterial.[4]

### Were the Newkirk Trusts Irrevocable?

■ Whether the Newkirk trusts were or were not revocable is a matter of Texas law. The take-nothing judgment against Moore in Moore v. Mullins, in the District Court of Reeves County, in his trespass to try title action against his daughters and the trustee of the Newkirk trusts and the court's finding and conclusion that it was not Moore's intention to reserve any power to revoke the Newkirk trusts and that as a matter of law the trusts were irrevocable by their own terms, was a judgment of a Texas court of competent jurisdiction on the matter; such judgment is valid as between the parties and is binding on the government here unless collusive. The Supreme Court in Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, cited in Farish v. United States, (D.C.,) 233 F.Supp. 220, aff'd 360 F.2d 595 (5 Cir., 1966), held that the good faith and judicial character of a judgment of a state court settling property rights under a trust is not lightly to be impugned or ignored on the ground of collusiveness. The decisive inquiry in this regard is whether there was a genuine issue of law or fact, and a bona fide controversy. Saulsbury v. United States (5 Cir., 1952), 199 F.2d 578, 580; Miller v. Commissioner, T.C.Memo. 163–215; Flitcroft v. Commissioner (9 Cir., 1964), 328 F.2d 449.

In Moore v. Mullins, the trust instruments and the issue as to their effect were before the court. The judge made his decision; his good faith in rendering the judgment is not to be impugned. The judgment was rendered after a trial in which the case was aggressively contested, was fully briefed and argued, and was adversary in every sense of the word; and its determination that these trusts were irrevocable is binding upon the government.

---

4. "Ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust for the grantor or reconveyed to the grantor or some other person, is an express trust which cannot be enforced where the statute of frauds requires a written instrument to create a trust." Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, 988. No question of enforcement is involved here. Ashby fully and faithfully carried out the trust agreement. Had he breached it, equity would have enforced it "by reason of the confidential relationship [attorney and client] between the parties." Id. 210 S.W.2d at 989. Assuming the Ashby trust to be an express trust, the Texas Trust Act, Art. 7425b–2, does not apply to "(4) instruments wherein one or more persons are mere nominees [as Ashby] for one or more persons without any disclosed beneficiaries and without any active trust duties."

*The Ashby Lease as a Capital Asset*
*for Tax Purposes*

 Whether the Ashby lease is a capital asset for tax purposes presents solely a question of federal tax law. After the execution of the lease to Ashby, Moore's beneficial ownership of one-half of it was a part of his property and a "capital asset" to him. However, under federal tax law, a bonus paid to a landowner for an oil and gas lease (under Texas law a conveyance of a determinable fee—a part of the bundle of rights constituting the landowner's ownership of a capital asset—his land) is taxable as ordinary income subject to depletion, and not as a "capital gain." Burnet v. Harmel, 287 U.S. 103, 106–107, 53 S.Ct. 74, 77 L.Ed. 199. A landowner could not, merely by making an oil and gas lease to a nominee to hold for him and entirely subject to his control and continued beneficial ownership, change his tax situation so that when his nominee, for him and by his instructions, assigns the lease, the proceeds will be taxable at capital gain rates. If that were the case, any landowner whose land has possible oil and gas prospects would do well to make a lease to a nominee so that if and when the land becomes valuable for oil and gas leasing purposes, he can (instead of making a lease for a bonus, taxable as ordinary depletable income) simply have his nominee, for him, assign the lease for a substantial consideration taxable at capital gain rates. No case where the tax effect of such a procedure has been spelled out is cited to the court. If one arose, the federal court should "look through form to substance" and hold the consideration for the assignment to be taxable to the landowner who received it as ordinary depletable income and not at capital gain rates. Under the facts of the present case, therefore, the consideration received by Gilmore for the "assignment" to Mobil was taxable as ordinary depletable income regardless of his retention of an overriding royalty.

 Although Moore's situation differs from Gilmore's in that Moore immediately and permanently divested himself of his ownership of the surface and underlying minerals, retaining only his half interest in the Ashby lease, this divestiture was contemplated when the Ashby lease was made. And, Moore's situation is the same as though he had reserved the leasehold interest in the conveyances to Newkirk—a procedure which, as plaintiff says, would have been quite complicated, though not impossible. Did his interest in the Ashby lease thereby become a capital asset in the sense that, for tax purposes, if and when he should sell it, the consideration would be taxable at capital gain rates rather than as ordinary depletable income? No case which answers this question is cited. Moore was in the oil business. If he acquired an oil and gas lease on someone else's land and then sold it at a profit, the profit would be a capital gain, taxable at capital gain rates—long-term if held more than six months. Here, however, Moore was the landowner—original lessor. After the conveyances to Newkirk, Moore remained owner of an oil, gas and mineral leasehold estate on this land, the payment for which should be treated for tax purposes the same as the lease bonus paid to any landowner. He and Gilmore, or he as a cotenant, could have developed and operated the lease themselves, without making any assignment. The Ashby trustee lease was simply a vehicle whereby leasehold rights could be (and were) ultimately vested in an oil company or other developer. What Moore retained after execution of the lease and the Newkirk trusts was in effect the right to lease the land and retain the consideration, and when the "assignment" to Mobil (which as hereinafter noted contained many provisions commonly found in oil and gas leases) was made, it was in practical effect an oil and gas lease, the consideration for which should be treated as a lease bonus and taxable as ordinary depletable income, just as though Moore had leased to Mobil while he was still the owner of the

land, he having retained the "power"[5] to do so when he conveyed the land to Newkirk, Trustee. The Mobil payment for the "assignment" was the "initial bonus" paid to the owner-lessor having the power to grant an oil and gas lease. See Burnet v. Harmel, supra, 287 U.S. at 106, 53 S.Ct. 74.

### Was the Assignment to Mobil a "Sublease" for Tax Purposes?

 This, too, presents a question solely of federal tax law.

 As far as the state law is concerned, the distinction between assignment and sublease in the law of landlord and tenant has to do with the question of privity between the original lessor and the assignor or sublessee. That distinction is not believed to be applicable to oil and gas leases, which in this state are not really "leases," but conveyances of a determinable fee. 3 Summers Oil and Gas, p. 612; Earl A. Brown, "Assignments of Interests in Leases," 5th Annual Institute on Oil and Gas Law and Taxation, at p. 31. An assignment of an oil and gas lease reserving an overriding royalty, as far as the state law is concerned, is an assignment; and an assignment containing provisions of its own commonly found in oil and gas leases is nonetheless an assignment.[6]

Turning now to the federal cases:

 The government argues that the assignment to Mobil was a sublease because it reserved an overriding royalty, which was owned equally by Moore and Gilmore until Ashby's assignment of the override to Gilmore and the production payment to Moore, which effected an exchange. I do not agree. At and prior to the assignment to Mobil, it was agreed that the overriding royalty was reserved for Gilmore and the production payment for Moore. One of the proposed findings

of fact (No. 10) submitted by the government is that "[the agreement between Gilmore, Moore, and Ashby to reserve an overriding royalty for Gilmore and a production payment for Moore was] known to the Mobil officials negotiating assignment of the lease, and it was of no concern to them one way or another," and I find this to be a fact. The assignments by Ashby to Gilmore and Moore, respectively, only carried out the agreement and did not constitute an exchange. The "assignment" to Mobil was not, therefore, a sublease of Moore's interest *merely* because of the reservation of an overriding royalty. And I do not consider the "assignment" to be a sublease merely because it covered only oil, gas and hydrocarbons, whereas the lease to Ashby covered oil, gas and other minerals. More important is the fact that, while the lease to Ashby was for a primary term of ten years from February 17, 1958, the terms of the "assignment" to Mobil made and determined by Moore and Gilmore—not Ashby—expressly provided that it was for a term of five years and six months from October 14, 1959, and "as long thereafter as oil, gas and other hydrocarbons is produced from said land or operations are being carried on"—a "primary term" (called in the "assignment" the "assignment term") which would expire about three years before the expiration of the primary term of the lease. In the common law of landlord and tenant, an assignment of a lease for less than the full term is a sublease. Black's Law Dictionary defines an "underlease" as "a lease granted by one who is himself a lessee for years, for any fewer or less number of years than he himself holds." In Amco Trust, Inc. v. Naylor, 159 Tex. 146, 317 S.W.2d 47, 73 A.L.R.2d 1109, the Texas Supreme Court said:

"In order to constitute an assignment, the lessee must part with his entire

---

5. Stephens County v. Mid-Kansas Oil & Gas Co., supra, 254 S.W. at 292.

6. While it is true that in Hamblen v. Placid Oil Co., 279 S.W.2d 127, 131, the Texas Court of Civil Appeals held that an assignment reserving an overriding royalty

"technically created a sublease and not an assignment" (citing cases, only two of which related to an oil ad gas lease), this case was reversed and rendered on other grounds by the Supreme Court, sub nom. Mecom v. Hamblen, 155 Tex. 494, 289 S.W.2d 553.

interest in all or part of the demised premises without retaining any reversionary interest. One who thus acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor. An assignee is accordingly liable for the rent reserved in the lease and for the performance of covenants which run with the land. If, on the other hand, the lessee retains any reversionary interest, no matter how small it may be, his transferee is not in privity of estate with the lessor and is regarded as a sublessee. There is no privity of contract between the lessor and a sublessee, and the latter is not liable to the lessor on the covenants of the lease, unless he assumes or otherwise binds himself to perform the same." 317 S.W.2d at 50.

■ Although this common law distinction between assignments and subleases is not applicable to oil and gas leases in Texas, it is, at least to some extent, applicable nation-wide for tax purposes, as exemplified by the settled tax law that an assignment reserving an overriding royalty is a sublease, wherefore the cash consideration received is taxable as ordinary depletable income. But perhaps not too much emphasis should be put on the mere characterization of this assignment as a sublease vel non. The cases West v. Commissioner (5 Cir., 1945), 150 F.2d 723, and Campbell v. Fasken (5 Cir., 1959), 267 F.2d 792, cited by the government, while different on the facts, are not irrelevant. In *Fasken,* the landowner conveyed to each of three oil companies, by ordinary mineral deeds, 45% of the oil, gas and other minerals "in and under and that may be produced from" various different tracts of land, down to a depth of 5500 feet, subject to contracts whereby the oil companies were to drill wells and Fasken was to pay stipulated amounts for his share of development and operation. In *West,* the landowner conveyed to an oil company certain lands, except a ⅛ royalty, under an agreement regarding development and operations by the oil company. The agreement contained provisions "usually found in leases." West was not to be chargeable with any costs. The Tax Court found that the transaction more nearly resembled a lease than a sale, although it was a conveyance of minerals. The Court of Appeals agreed, and *West* was followed in *Fasken.* Both of these cases are distinguishable from the present case because in each case the landowner retained a mineral interest, while in the present case Moore retained only a production payment. Nevertheless, they tend to indicate that the transaction is to be regarded as a whole, rather than the name to be given to an instrument, to see whether it has the attributes of a lease. The "assignment" to Mobil provided, in language similar to that ordinarily found in oil and gas leases, for the following, not found in the lease to Ashby: (1) a different primary term, (2) an annual delay rental for deferring the commencement of operations, in terms usually found in oil and gas leases, (3) a right to surrender in whole or in part, reducing delay rentals proportionately. It also provided for termination at the end of the primary term (if it remained in effect under the "assignment term" provision) except as to the equivalent of three or three and one-half sections for each well then producing, to be designated by Mobil, the rights of the parties with respect thereto to be "determined as if a separate oil and gas lease existed, having such of the terms and provisions of the lease dated February 17, 1958, and of this assignment as then remain effective and applicable," and for termination at the end of ten years as to all zones and formations below the deepest formation penetrated by a test well unless a well was drilled to the Ellenburger formation. It provided that no test well should be drilled within 300 feet of any water well of the surface owner without his permission. It reserved the right to take over as a water well any well which Mobil proposed to abandon. Its purpose was the production of oil. It certainly had the normal attributes of a leasing transaction, the con-

sideration for which is taxable as ordinary depletable income.

If the "assignment" be treated as a lease, under the philosophy of the *West* and *Fasken* cases, the fact that Moore reserved a production payment instead of an overriding royalty becomes immaterial. In reason, a cash bonus received by a landowner for an oil and gas lease would be no less taxable as ordinary depletable income if the lessor reserved a production payment instead of a fee royalty, though that would be very unusual. However, this feature distinguishes this case from *West* (where West reserved royalty). In *Fasken*, the landowner did not part with his title to 55% of his minerals, but he reserved nothing out of the 45% conveyed to the oil companies; and it was those conveyances, coupled with the contracts relating to the development of the respective tracts and providing the manner of sharing expenses, that were held to be tantamount to leases for tax purposes.

Whether the "transaction in substance amounted to a lease of the minerals" [West v. Commissioner, 150 F.2d 723, 726, 728 (5 Cir., 1945); Campbell v. Fasken, 267 F.2d 792, 796–797] or "partakes of the nature of a sublease rather than of a sale" [Hogan v. Commissioner, (5 Cir.,) 141 F.2d 92, 94], "the initial payments" ($57,500 and $592,030) to Moore and Gilmore by Mobil "must be treated as lease bonuses * * * as income to them" [Campbell v. Fasken, supra, 267 F.2d at 797]; and Moore "was not entitled to treat the assignment as a sale of a capital asset" within the "Capital Gains" sections, 1201–1241, of the Internal Revenue Code. Hogan v. Commissioner, supra, 141 F.2d at 94. The transaction before the court partakes of the characteristics of both a lease and a sublease; in reality and substance it was a "leasing transaction" between Moore and Gilmore and Mobil, the consideration for which is taxable as ordinary depletable income and not as capital gains. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199.

Finally, the government claims that all of Mobil's bonus payments should be considered as income to plaintiff Moore in 1960. I find that $57,500 of the Mobil payments was made by Mobil to Moore and Gilmore equally on November 18, 1959. The legal effect is to make $28,750 taxable as part of Moore's 1959 income and not 1960.

Plaintiff Moore and wife are entitled to a refund for the amount of the tax and interest thereon paid on the income in 1960 from the Newkirk trusts erroneously assessed against the trustor, and of the tax assessed on the $28,750 portion of the Mobil bonus payments erroneously included in Moore's 1960 income, and of the tax erroneously assessed on the production payment as being received in exchange for an overriding royalty. Plaintiff Moore and wife are not entitled to any further refund, as the tax paid on the money consideration for the "assignment" to Mobil was properly taxed as ordinary depletable income and not as capital gain.

Judgment shall be rendered herein accordingly. Counsel are directed to prepare and present a judgment consistent with this Memorandum Opinion forthwith.