**Doris Polk SIMS, Plaintiff,**

v.

**INEXCO OIL COMPANY, et al., Defendants.**

**Civ. A. No. J83–0438(B).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 21, 1985.

James Russell Tucker, Kenneth I. Franks, Jackson, Miss., Vernon L. Terrell, Jr., New Orleans, La., for Tomlinson Interests.

Walker L. Watters, Robert P. Thompson, Jackson, Miss., for Hunt Oil.

J. Michael Rediker, W. Clark Goodwin, Birmingham, Ala., Allan P. Bennett, Ernest G. Taylor, Jr., Jackson, Miss., for Albert and Burgess Tomasson.

Harold D. Miller, Jr., Christy D. Jones, Jackson, Miss., for Inexco.

Alex A. Alston, Jr., Janice Holley Parsons, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on the Cross-Motions for Partial Summary Judgment of Plaintiff, Doris Polk Sims ("Sims"), and Defendant, Inexco Oil Company ("Inexco"), to determine the extent of liability of an oil, gas and mineral lease lessee [Inexco] to its lessor [Sims].

### FACTS

On November 15, 1976, Sims, as Lessor, executed an oil, gas and mineral lease referred to as a PAID UP–MISS. Form lease to Inexco, as Lessee, covering approximately 114.79 acres in Lawrence County, Mississippi. The lease provides that "[t]he rights of the Lessor and Lessee hereunder may be assigned in whole or in part." The lease also provides that if any or all of the lease is assigned, then no leasehold owner shall be liable for any act or omission of any other leasehold owner.

The Sims lease was pooled with other leases to form drilling units which resulted in three producing oil and/or gas wells— Myers No. 1 Well, Myers No. 2 Well and Jones No. 1 Well. Defendant, Tomlinson Interests, Inc. ("Tomlinson")[1], was the operator of all three wells. Only the Myers No. 1 Well is involved in the Partial Summary Judgment Motions before the Court.

On August 2, 1979, Inexco entered into a Farmout Agreement with Tomlinson covering the Myers No. 1 Well and others. After completion of the Myers No. 1 Well, the Farmout Agreement was amended on September 24, 1979, to include the Myers No. 2 Well. The amendment also gave Tomlinson permission to assign portions of the Sims lease to Defendants, Hunt Oil Company ("Hunt"), and Albert F. Thomasson and Burgess A. Thomasson (hereinafter collectively referred to as the "Thomassons"), subject to the terms of the Farmout Agreement.

The Farmout Agreement and amendment provided that if a producing well were completed, Tomlinson would become entitled to an assignment of interest in the Sims lease and others. The Farmout Agreement also provided that if Tomlinson earned an interest in the leases, then Tomlinson and Inexco would execute an operating agreement whereby Tomlinson would be entitled to all production from the earning well(s), except for an overriding royalty interest equal to 25% reserved by Inexco for the period from completion of the wells until "payout," as defined in the Agreement. The two Myers wells were drilled and completed under the Farmout Agreement and amendment.

On September 24, 1979, Inexco, pursuant to the terms of the Farmout Agreement, assigned an interest in the two Myers Wells to Tomlinson. Inexco did not assign its interest in the Jones No. 1 Well. Pursuant to the terms of the assignment, Inexco reserved an overriding royalty interest equal to 25% less existing royalty and overriding royalty burdens. According to the Farmout Agreement between Inexco and Tomlinson, the 25% overriding royalty interest reserved by Inexco

... shall automatically convert into and be exchanged for a fifty percent (50%) working interest therein and in production therefrom, upon payout of the earning well or wells unless within thirty (30) days following notice to [Inexco] of payout [Inexco] exercised its retained option to retain the said overriding royalty in-

---

1. The automatic stay provisions of 11 U.S.C. § 362 protect Tomlinson as a result of the bankruptcy pending in the Bankruptcy Court for the Southern District of Texas, Houston Division.

Consequently, any ruling of this Court as it pertains to Tomlinson is subject to the automatic stay provisions.

terest in lieu of a fifty percent (50%) working interest.

Consequently, under the Farmout Agreement, Tomlinson was entitled to retain 100% of the revenue from the wells until it recouped its drilling and completion expenses but was obligated to pay royalty and overriding royalty owners, including Inexco, during that period. Once the overriding royalty interest retained by Inexco converted to a 50% working interest, it, too, became liable to Sims for royalty payments.

As a royalty interest owner in the Myers No. 1 Well, Sims was entitled to a three-sixteenths ($3/16$) royalty on all gas production attributable to lands covered by her lease. The Myers No. 1 Well began producing on May 20, 1981. According to the Farmout Agreement, its amendment and subsequent assignments, Tomlinson, Hunt and the Thomassons were collectively obligated to pay Sims royalties until payout in amounts attributable to their respective interests. Payout on the Myers No. 1 Well occurred on July 14, 1981. According to Inexco, it did not receive written notice of payout on the Myers No. 1 Well until December 3, 1982.

Inexco and Hunt entered into a gas sales contract with Southern Natural Gas Company for the sale of the gas production from the subject wells. Tomlinson and the Thomassons entered into a sales contract with Defendant, Transcontinental Gas Pipeline Corporation ("Transco"), for the sale of their gas produced from the Myers No. 1 Well. Allegedly, the gas sales contract between Tomlinson, the Thomassons and Transco was amended to include a market-out clause which Sims claims diminished her rights under her lease with Inexco.

Sims asserts two basic positions:

(1) She has not been paid all royalties owed her on the three wells; and

(2) She has been deprived of the fair value of her gas royalties for gas sold under the Tomlinson-Thomasson-Transco gas sales contract as a result of the alleged amendment which inserted a market-out clause.

With regard to non-payment of royalties, Sims claims that Tomlinson, Hunt and the Thomassons breached the covenant to pay her royalties attributable to their interest in her lease. She also contends that Inexco is liable for non-payment of royalties on the basis that the assignment from Inexco to Tomlinson is a sublease under which Inexco remains liable to her. Sims also seeks to hold Inexco liable, as sublessor, for the alleged breach of the covenant to market the gas which was allegedly committed by Tomlinson and the Thomassons when the gas sales contract with Transco was amended to insert a market-out clause to allegedly deprive her of the fair value of her gas royalties on gas sold under the Tomlinson-Thomasson-Transco gas sales contract.

Inexco argues that the agreement between it and Tomlinson is an assignment and not a sublease. Accordingly, Inexco contends that it is not liable, as assignor, for the alleged breach by Tomlinson, Hunt and the Thomassons of their duty to pay Sims royalties or for the alleged breach by Tomlinson and the Thomassons of the covenant to market. To the contrary, Inexco argues that its liability to Sims for royalty payments is as follows:

1. JONES NO. 1 WELL—Inexco concedes liability for all royalties attributable to the Sims lease with regard to the Jones No. 1 Well;

2. MYERS NO. 2 WELL—Inexco assumes no responsibility to Sims for royalties attributable to Myers No. 2 Well since it never reached payout; and

3. MYERS NO. 1 WELL—Inexco concedes liabilities for royalties attributable to its retained 50% working interest from and after December 3, 1982—the day it received notice of payout on the Myers No. 1 Well.

Accordingly, the issues to be decided by this Court on the Cross-Motions of Sims and Inexco for Partial Summary Judgment are:

1. Did Inexco and Tomlinson enter into an assignment or a sublease; and

2. When was Inexco obligated to begin paying Sims royalties on the Myers No. 1 well attributable to its 50% working interest—upon payout (July 14, 1981) or upon payout and notice thereof (December 3, 1982)?

With regard to the first issue, if the agreement between Inexco and Tomlinson is deemed to be an assignment and not a sublease, then Inexco is only liable to Sims for royalties attributable to its 50% working interest from either July 14, 1981, or December 3, 1982—whichever this Court ultimately decides. If, on the other hand, the agreement between Inexco and Tomlinson is a sublease, then Inexco is liable to Sims for all unpaid royalty payments owed by Tomlinson, Hunt and the Thomassons from the date of first production to payout and for royalty payments attributable to its 50% working interest from either July 14, 1981, or December 3, 1982. Inexco, as sublessor, would also be liable for the alleged breach by Tomlinson and the Thomassons of the covenant to market.

If Inexco is deemed to be a sublessor rather than an assignor, then it seeks indemnification from Tomlinson, Hunt and the Thomassons on its cross-claims and third party claims against those parties for breaching the respective agreements between the parties. Since Sims also seeks damages from Transco for its alleged tortious acts in inducing Tomlinson and the Thomassons to breach their obligation to Sims through amendment of the Tomlinson-Thomasson-Transco gas contract, Inexco also seeks recovery from Transco on the grounds that the alleged tortious actions of Transco would have caused Tomlinson and the Thomassons to breach their contract with Inexco.

## ASSIGNMENT OR SUBLEASE

■ Succinctly stated,

[i]f the transfer is classified as a sublease, the benefit of the covenants made by the lessee [Inexco] do not run to the sublessee [Tomlinson, et al.]; if, however, the transfer is classified as an as-

signment, both burden and benefit are normally said to run to the transferee. Williams and Meyers, *Oil and Gas Law,* § 412.1 at 319.20. In other words, if the transaction is an assignment, then "the duty of the lessee to pay oil and gas royalties, gas well rentals, and additional royalties out of the first production of oil, pass [sic] to the assignee of the lease." 3 Summers, *The Law of Oil and Gas,* § 553 at 586. Likewise, the duty to market passes to the assignee upon assignment and remains his responsibility during the time he owns a working interest. *Cole Petroleum v. United States Gas and Oil Company,* 121 Tex. 59, 41 S.W.2d 414, 416 (1931); Williams and Meyers, *supra* at § 410.

■ Sims argues that the transaction between Inexco and Tomlinson is a sublease even though designated an assignment because the transferor (Inexco) reserves an overriding royalty interest (25%), retains a reversionary interest (50% working interest), has the power to terminate the transfer for breach of conditions by the transferee (Tomlinson), transfers less than all of its estate, and retains control over the operations of the transferee. To support her position, Sims relies upon Louisiana decisions and the decisions of other courts which applied the law of landlord and tenant to the field of oil and gas and held that where the above factors exist, the transaction is a sublease and not an assignment. *See, e.g., Cockburn v. O'Meara,* 155 F.2d 340 (5th Cir.1946) (construing Louisiana law); *Iberian Oil Corporation v. Texas Crude Oil Company,* 212 F.Supp. 941 (W.D.La.1963); *Smith v. Sun Oil Company,* 165 La. 907, 116 So. 379 (1928); *Saling v. Flesch,* 85 Mont. 106, 277 P. 612 (1929); *McNamer Realty Company v. Sunburst Oil and Gas Company,* 76 Mont. 332, 247 P. 166 (1926); *Hartman Ranch v. Associated Oil Company,* 10 Cal.2d 232, 73 P.2d 1163 (1937); *Shreck v. Coates,* 59 Ariz. 269, 126 P.2d 308 (1942).

The argument of Inexco is three-fold. Inexco first argues that this Court should not subvert the clear intent of the parties as revealed by the lease, Farmout Agree-

ment and assignment which was to allow assignments by the lessor or lessee of all or portions of the lease. Inexco also argues that, consistent with industry practices, the lease contemplates that a lessee assigning an interest to others also intends to totally relieve itself of its obligations to the lessor to the extent of the interest assigned.

Next, Inexco argues that the Louisiana oil and gas decisions should not be followed because of the distinctions between the philosophy of oil and gas law in Louisiana and Mississippi and Texas. Inexco notes that Mississippi and Texas follow the "ownership in place" theory in which an oil and gas lease is a conveyance of real property and the transferee obtains a determinable fee in minerals. *See, e.g., Doughterty v. Greene,* 218 Miss. 250, 67 So.2d 297 (1953); *Koenig v. Calcote,* 199 Miss. 435, 25 So.2d 763 (1946); *Texas Company v. Daugherty,* 107 Tex. 226, 176 S.W. 717 (Tex.1915). In Louisiana, there is no absolute ownership of minerals in place under an oil and gas lease since an oil and gas lease conveys only the right to the use or enjoyment of the property. *See, e.g., Roberson v. Pioneer Gas Company,* 173 La. 313, 137 So. 46, 48 (1931); *Prestridge v. Humble Oil and Refining Company,* 131 So.2d 810 (La.App.1961).

Finally, Inexco contends that the common law distinction between assignments and subleases applicable to the law of landlord and tenant should not be applied to the oil and gas field. Inexco urges this Court to follow the law of Texas, as Mississippi has done in past, *see, e.g., Piney Woods Country Life School v. Shell Oil Company,* 539 F.Supp. 957 (S.D.Miss.1982); *Berry v. Tide Water Associated Oil Company,* 188 F.2d 820 (5th Cir.1951); *Carlisle v. Federal Bank of New Orleans,* 217 Miss. 289, 64 So.2d 142 (1953); *Merrill Engineering Company v. Capital National Bank,* 192 Miss. 378, 5 So.2d 666 (1942), and hold that the

> common law distinction between assignments and subleases is not applicable to oil and gas leases....

*Moore v. Campbell,* 267 F.Supp. 126, 135 (N.D.Tex.1967).

In this case of first impression in Mississippi, this Court agrees with Inexco and finds that the intent of the parties should control, that the law of Louisiana is inapplicable because of its unique principles in oil and gas law and that the law of Texas should be used as a guide.

Texas has determined that an assignment of oil and gas rights is an assignment and not a sublease regardless of the reservation and retention by the lessee/assignor of rights and interests under the assignment. In *Moore v. Campbell,* 267 F.Supp. 126 (N.D.Tex.1967), the United States District Court for the Northern District of Texas determined that, under federal tax law, the assignment of an oil and gas lease was a sublease and that the initial payments to the lessors were ordinary income and not capital gains. In so ruling, the court stated that:

> [a]lthough this common law distinction between assignments and subleases is not applicable to oil and gas leases in Texas, it is, at least to some extent, applicable nation-wide for tax purposes, as exemplified by the settled tax law that an assignment reserving an overriding royalty is a sublease.

*Id.* at 135.

However, the court, discussing the law of oil and gas in Texas, noted that:

> [a]s far as the state law is concerned, the distinction between assignment and sublease in the law of landlord and tenant has to do with the question of privity between the original lessor and the assignor or sublessee. *That distinction is not believed to be applicable to oil and gas leases, which in this state are not really 'leases,' but conveyances of a determinable fee. [citations omitted]. An assignment of an oil and gas lease reserving an overriding royalty, as far as the state law is concerned, is an assignment; and an assignment containing provisions of its own common-*

*ly found in oil and gas leases is nonetheless an assignment.*

*Id.* at 134. [emphasis added].

This Court also finds support for its decision among the legal scholars in the oil and gas field who unanimously counsel against application of the sublease theory to oil and gas leases on the basis that this ancient precedent from landlord and tenant law has no real application to oil and gas transactions. 1 Brown, *The Law of Oil and Gas Leases,* § 11.04 at 11–29. *See also,* Williams & Meyers, *supra* at § 414, p. 334.1; Hemingway, *The Law of Oil and Gas,* § 9.11 at 505; 3 Summers, *supra* at § 553, p. 602; Merrill, *The Partial Assignee—Done in Oil,* 20 Tex.L.Rev. 298, 322 (1942). According to these authorities the sublease-assignment distinction drawn from the law of landlord and tenant is

> utterly inappropriate to the law of oil and gas.... The oil business simply has no conception of the distinction.... The results which follow from it, particularly with regard to the transferee's non-liability to the lessor, seem impolitic, contrary to the general understanding of those engaged in the business, and at variance with the practice of the industry. Since the oil and gas lease is not really a lease ..., there is no compulsion to make the distinction.

Merrill, *supra,* at 322. Another authority suggests that:

> [t]he assignment-sublease distinction should not apply to oil and gas leases. States without authority on the matter should reject it; states that have adopted the distinction should repudiate it.

Williams & Meyers, *supra* at § 414, p. 334.-1.

The Court finds that Inexco and Tomlinson clearly intended to assign a portion (50%) of the Sims lease to Tomlinson. Surely Inexco would not have agreed to retain only a 25% overriding royalty interest if it were also to be obligated to pay Sims all royalty payments and market the production. Consequently, this Court finds that Inexco is not liable for:

(1) The alleged failure of Tomlinson, Hunt and the Thomassons to pay Sims royalties pursuant to the Farmout Agreement; or

(2) The alleged acts of Tomlinson, the Thomassons and their alleged co-conspirator, Transco, in connection with their gas sales contract.

Accordingly, the Court does not consider whether Inexco is entitled to seek indemnity from Tomlinson, Hunt, the Thomassons and Transco. The Court does find, as Inexco has conceded, that Inexco is liable for royalty payments to Sims on the Myers No. 1 Well attributable to the 50% working interest retained by it under the Farmout Agreement and assignment. The question to be considered next by this Court is when that liability commenced.

## PAYOUT OR PAYOUT AND NOTICE OF PAYOUT

█ Payout on the Myers No. 1 Well occurred on July 14, 1981. Inexco claims it did not receive written notice of payout until December 3, 1982, and that its liability for 50% of the royalty payments to Sims did not commence until December 3, 1982, when it received notice of payout. The position of Inexco is without merit. The Farmout Agreement clearly states that:

> [Inexco's] reserved overriding royalty interest in and to said well or wells *shall automatically convert* into and be exchanged for a 50% working interest ..., upon payout ... *unless* within thirty days following notice to it of payout *[Inexco] exercised its retained option to retain the said overriding royalty interest in lieu of a fifty percent (50%) working interest.* [emphasis added].

The Farmout Agreement clearly contemplates that the overriding royalty interest reserved by Inexco "shall *automatically* convert" to a 50% working interest unless Inexco exercised its option to retain its overriding royalty interest within 30 days of receipt of notice of payout. Consequently, on July 14, 1981, the date of payout on the Myers No. 1 Well, the overriding royalty interest retained by Inexco automatical-

ly converted to a 50% working interest and Inexco became liable for royalty payments to Sims attributable to its interest in the Sims lease. On December 3, 1982, the date Inexco alleges it received notice of payout, Inexco had 30 days to notify Tomlinson that it chose to retain its overriding royalty interest. If Inexco chose to retain its overriding royalty interest, it would not be liable for 50% of the royalty payments owed Sims. Since Inexco did not choose to retain its overriding royalty interest within 30 days of December 3, 1982, its overriding royalty interest automatically converted to a 50% working interest and its liability for royalty payments to Sims attributable to its interest commenced at payout—July 14, 1981.

In summary, the Court rules that the Motion of Sims for Partial Summary Judgment is denied in part and granted in part. Likewise, the Motion of Inexco for Partial Summary Judgment is denied in part and granted in part.