Brooks 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-94-00446-CV







Larry C. Brooks, Appellant



v.



Lawrence Five State Partnership, f/k/a Lehndorff-Lawrence Partnership;


LGB Minerals, Inc., f/k/a Lehndorff/LGB Minerals, Inc.; Lehndorff Minerals VIII,


Ltd.; Lawrence Five State, Ltd., f/k/a Lehndorff-Lawrence Five State, Ltd.; M.S.


Holdings, Ltd.; NEGP, Inc.; KS Properties Ltd.; Franz Carl Weber U.S.A., Inc.;


Valor, Ltd.; K.S. Properties; Erwin Schmid; and Susanne Schneider, Appellees



AND



Lawrence Five State Partnership, f/k/a Lehndorff-Lawrence Partnership;


LGB Minerals, Inc., f/k/a Lehndorff/LGB Minerals, Inc.; Lehndorff Minerals VIII,


Ltd.; Lawrence Five State, Ltd., f/k/a Lehndorff-Lawrence Five State, Ltd.; M.S.


Holdings, Ltd.; NEGP, Inc.; KS Properties Ltd.; Franz Carl Weber U.S.A., Inc.;


Valor, Ltd.; K.S. Properties; Erwin Schmid; and Susanne Schneider, Appellants



v.



Larry Clifton Brooks, William White Brooks, and Lillian Clifton Brooks, as independent

executrix of the estate of Clifton B. Brooks, deceased, Appellees





FROM THE DISTRICT COURT OF IRION COUNTY, 51ST JUDICIAL DISTRICT


NO. CV-92-1448, HONORABLE ROYAL HART, JUDGE PRESIDING







 The opinion and judgment issued by this Court on January 10, 1996, are hereby
withdrawn and the following opinion is substituted in lieu thereof.

 Appellant Larry C. Brooks ("Brooks") leased certain oil and gas rights to C.F.
Lawrence and Associates ("Lawrence"). Subsequently, Lawrence assigned an eighty-percent
working interest to appellee Lawrence Five State Partnership f/k/a Lehndorff-Lawrence
Partnership ("Lehndorff"). (1) Brooks (2) sued Lehndorff (3) in district court for unpaid royalties and
damages to the surface of his land. The trial court ruled that Lehndorff was liable to Brooks as
a matter of law and a jury awarded Brooks damages for unpaid royalties and for attorneys' fees
accrued in the preparation and trial of the case, but not for damage to the surface estate or
appellate attorneys' fees. Brooks appeals the zero-damage finding and the denial of appellate
attorneys' fees. By cross-points and an independent appeal, Lehndorff appeals the trial court's
grant of partial summary judgment holding it liable to Brooks as a matter of law. We will reverse
the trial court's judgment and render judgment that appellant Larry Brooks and the other trial-court plaintiffs--William White Brooks, and Lillian Clifton Brooks, as independent executrix of
the estate of Clifton B. Brooks--take nothing.



BACKGROUND

 Brooks owns land located in Irion County, Texas. By an oil and gas lease (the
Brooks Unit Lease Agreement or "BUL") effective September 20, 1982, Brooks leased certain
mineral interests to Lawrence. Effective December 23, 1986, Lawrence assigned eighty percent
of its working interest under the BUL to Lehndorff. (4) On March 14, 1990, (5) Lehndorff assigned
all of its working interest under the BUL back to Lawrence, the original lessee, reserving only
an overriding royalty interest.

 Brooks filed suit against Lehndorff on July 31, 1992. Brooks moved for partial
summary judgment, alleging that Lehndorff was liable for unpaid royalties for production during
the years 1991 and 1992 and for damage to the surface land during the time covered by the BUL. 
Brooks' theory was that by taking an assignment of a portion of the working interest, Lehndorff
assumed all the obligations and covenants of the lease for its entire term and could not relieve
itself of these obligations and covenants merely by later reassigning its entire working interest. 
Lehndorff also moved for partial summary judgment, arguing that the statute of limitations barred
all of Brooks' claims for breach of contract arising before July 31, 1988 and that all of Brooks'
claims for damages incurred after December 1, 1989 (6) were meritless because Lehndorff owed no
duty to Brooks after it reassigned its working interest in the BUL. The trial court granted partial
summary judgment for Brooks and ordered:


that [Defendants] are liable to Plaintiffs, pursuant to the Brooks Unit Lease, for all
unpaid royalties accruing from and after July 31, 1988;


that [Defendants] are liable to Plaintiffs, pursuant to the Brooks Unit Lease, as
liquidated damages, . . . for all damage to the surface accruing from and after July
31, 1988 in accordance with and to the extent provided by said lease, said
defendants having liability of a lessee under said lease.


that [Defendants] are liable to Plaintiffs, pursuant to the Brooks Unit Lease, for
reasonable attorney's fees and costs of court incurred in the prosecution of this case
and any resulting appeals.



Although the summary judgment applied Lehndorff's statute of limitations date to Brooks' claim,
the trial court expressly denied Lehndorff's motion for partial summary judgment.

 The damage issues were tried to a jury. The jury found the amount of royalties
which had not been paid, awarded reasonable attorneys' fees only for the preparation and trial of
the case, but awarded nothing for Brooks' claim of damage to the surface estate. The trial court
rendered final judgment in accordance with the jury verdict.

 Brooks appeals that portion of the judgment that he take nothing by his claims for
surface damage and appellate attorneys' fees. Lehndorff, by cross-points and an independent
appeal, appeals the trial court's grant of partial summary judgment on liability in favor of Brooks
as well as the court's denial of Lehndorff's cross-motion for summary judgment on liability.



DISCUSSION AND HOLDINGS

Liability

 The main issue in this appeal is whether a temporary assignee of a working interest
in an oil and gas lease remains liable under the lease covenants after it has reassigned all of its
working interest. Oil and gas law provides that an assignee of a lease must either be in privity
of contract or privity of estate with the lessor in order to be liable to the lessor under the lease. 
Sowell v. Northwest Cent. Pipeline Corp., 703 F.Supp. 575, 578 (N.D. Tex. 1988). (7) We consider
each, in turn, to determine the scope of Lehndorff's liability under the lease.

 Privity of contract is the connection or relationship that exists between contracting
parties. Black's Law Dictionary 1199 (6th ed. 1990). Lawrence, the original lessee, was in
privity of contract with Brooks because Lawrence contracted directly with Brooks. However,
Lehndorff was not an original party to the lease and never contracted directly with Brooks. 
Brooks nevertheless seeks to establish privity of contract between himself and Lehndorff in two
ways.

 First, Brooks argues that terms within the BUL created privity of contract between
himself and Lehndorff. Specifically, Brooks relies on the following portions of paragraph 6 of
the BUL:



The rights of lessee hereunder may not be assigned in whole or in part so as to
change the designated operator (which is Lessee) or the majority interest owner of
the lease (which is Lessee) without the express written consent of Lessor, except
in those cases where Lessee wishes to mortgage its interests or to dispose of its
interests by merger, reorganization, consolidation or sale of all or substantially all
of its assets to a subsidiary or parent company or to a subsidiary of a parent
company, or to any company in which Lessee owns a majority of the stock;
provided however, such assignee or successor in interest agrees to be bound by all
the covenants and agreements herein contained . . . .


Any assignment or sublease by Lessee shall not diminish its obligation or liability
to Lessor. Lessee agrees to indemnify Lessor for any damages due Lessor by
reason of the acts of any agent, contractor, assignee or sublessee.



Brooks contends that this language from the BUL creates privity of contract between Brooks and
any assignee of the BUL. We disagree.

 The first portion of the assignment clause precludes any assignment of the lease that
would either change the operator (Lawrence) or the majority interest owner (Lawrence), without
the express written consent of Brooks (the lessor). The assignment clause provides two specific
exceptions to the requirement of written consent, neither of which applies here. The assignment
clause further provides that, in the event of an assignment, the assignee is bound by all the
covenants and agreements of the lease. This imposition of covenants upon assignees might make
an assignee liable to the lessor during the time an assignee holds a working interest in the lease,
but it does not impose liability for the entire lease term by creating privity of contract between the
lessor and an assignee. 

 The first sentence of the last paragraph of the assignment clause expressly obligates
the lessee (Lawrence) for the entire lease period, but it does not expressly obligate any potential
assignees. In the last sentence of that paragraph, the lessee agrees to indemnify the lessor for any
damages caused by the acts of any assignee. Therefore, the drafters of this clause clearly knew
how to distinguish between the lessee and an assignee. If the original parties intended the first
sentence to also obligate any potential assignees for the entire lease period, they could have
expressly so provided. We conclude that this imposition of an obligation on the lessee does not
create privity of contract between the lessor and a third-party assignee.

 Second, Brooks attempts to establish privity of contract by reference to general
landlord and tenant law. (8) Specifically, Brooks argues that an assignee of a lease is in privity of
contract with the lessor as a matter of law and therefore remains liable to the lessor even after the
assignee reassigns the entirety of its interest in the lease. We reject Brooks' argument because
oil and gas leases are not governed by landlord and tenant law. Brooks' position depends upon
a distinction, unique to landlord and tenant law, between assignments and subleases. "That
distinction is not believed to be applicable to oil and gas leases, which in this state are not really
`leases,' but conveyances of a determinable fee." Moore v. Campbell, 267 F.Supp. 126, 134
(N.D. Tex. 1967). We decline to extend this aspect of landlord and tenant law to oil and gas
leases. Therefore, we hold that Brooks was never in privity of contract with Lehndorff.

 Next we turn to the question of privity of estate. Privity of estate is a "[m]utual
or successive relation to the same right in property . . . ." Black's Law Dictionary 1199 (6th ed.
1990). An assignee of an oil and gas lease is liable to the lessor if the two parties are in privity
of estate. Sowell, 703 F.Supp. at 578. When Lehndorff received an assignment of eighty percent
of Lawrence's working interest under the BUL and gained possessory rights in the property, it
came into privity of estate with Brooks. While Lehndorff was in privity of estate with Brooks,
it was liable to Brooks both for unpaid royalties and for damage to the surface estate covered by
the BUL. However, this liability was not perpetual, but continued only while there was privity
of estate between Brooks and Lehndorff.

 On March 14, 1990, Lehndorff assigned its working interest in the BUL back to
Lawrence and reserved only an overriding royalty interest. "[A]n `overriding royalty' is an
interest in oil and gas produced at the surface, free of the expense of production, and carved from
the working interest held under an oil and gas lease . . . ." T-Vestco Litt-Vada v. Lu-Cal One Oil
Co., 651 S.W.2d 284, 291 (Tex. App.--Austin 1983, writ ref. n.r.e.). An overriding royalty
interest is essentially like any other royalty interest. McMahon v. Christmann, 303 S.W.2d 341,
344 (Tex. 1957). "While an overriding royalty, like any royalty, is an interest in land, `it is
clearly non-possessory, and hence the owner is not entitled to possessory remedies . . . .'" T-Vestco, 651 S.W.2d at 291 (citation omitted). Thus, after March 14, 1990, Lehndorff held only
a non-possessory interest in the BUL.

 Brooks argues that he remained in privity of estate with Lehndorff after March 14,
1990 because Lehndorff continued to hold a royalty interest in the land. We disagree. As holder
of a royalty interest, Lehndorff had no control over the operation of the BUL, the extraction and
collection of oil and gas, or the sale of oil and gas. Further, Lehndorff held no possessory rights
in the BUL after March 14, 1990. Brooks, on the other hand, retained possessory rights in the
surface estate. We conclude that Lehndorff's royalty interest in the BUL did not maintain the
privity of estate between Brooks and Lehndorff because Lehndorff no longer had possessory rights
in the property. After March 14, 1990 Lehndorff was no longer in privity of estate with Brooks.

 We have determined that Brooks and Lehndorff were never in privity of contract,
but were in privity of estate between December 23, 1986 and March 14, 1990. An assignee must
either be in privity of contract or privity of estate with the lessor to be liable under an oil and gas
lease. Sowell, 703 F.Supp. at 578. Therefore, we hold as a matter of law that Lehndorff can only
be liable to Brooks for any violations of the BUL covenants between December 23, 1986 and
March 14, 1990.

 We must now determine whether any of Brooks' claims are barred by limitations. 
Any claim for breach of contract must be brought not later than four years after the day the cause
of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West 1986). Brooks filed suit
on July 31, 1992. Therefore, the trial court correctly determined that the four-year statute of
limitations bars any of Brooks' claims that arose before July 31, 1988.

 Thus, we hold that Lehndorff is liable under the BUL to Brooks as a matter of law
only for the period of time between July 31, 1988 and March 14, 1990.



Damages

 We must next determine the proper amount of Brooks' damages in light of the
scope of Lehndorff's liability and the jury's verdict. Brooks asserted claims for three types of
damages: unpaid royalties, damage to the surface estate covered by the BUL, and reasonable
attorneys' fees.

 We first consider unpaid royalties. We have already held that Lehndorff is liable
to Brooks for any unpaid royalties for the period of time between July 31, 1988 and March 14,
1990. However, the uncontroverted evidence at trial showed that no unpaid royalties accrued
during this period of time. The proof conclusively established that the royalties were unpaid only
during 1991 and 1992. Therefore, we hold that Brooks is not entitled to any unpaid royalties
from Lehndorff.

 We next consider damages to the surface estate covered by the BUL. The jury
found that zero dollars were necessary to clean up or restore the land. Brooks challenges both
the legal and factual sufficiency of the evidence to support this adverse finding, on which he had
the burden of proof. We confine our review to the period of time during which Lehndorff was
potentially liable to Brooks: July 31, 1988 to March 14, 1990.

 When a party brings a legal-sufficiency point of error attempting to overcome an
adverse fact finding concerning an issue on which it has the burden of proof, we must first
consider only the evidence and inferences tending to support the finding of the trier of fact and
disregard all evidence and inferences to the contrary. If there is no evidence to support the
finding, we must then examine the entire record to see if the contrary proposition is established
as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); Holley v.
Watts, 629 S.W.2d 694, 696 (Tex. 1982); see Texas & N.O.R.R. v. Burden, 203 S.W.2d 522,
528-31 (Tex. 1947). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 523 (1991); Michol O'Connor,
Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 Brooks had the burden of proof at trial to establish the amount of his damages, and
the jury returned an adverse finding of no damages. Brooks' factual-sufficiency challenge
therefore alleges that the adverse jury finding was contrary to the great weight and preponderance
of the evidence. See Powers & Ratliff, supra at 519. In analyzing such a challenge, we must
consider and weigh all the evidence and should set aside the judgment only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also
Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). See generally Powers & Ratliff, supra.

 During his case-in-chief, Brooks presented little evidence of any spills or leaks
resulting in damage to the surface estate between July 31, 1988 and March 14, 1990. The vast
majority of the evidence described spills or leaks that occurred or were observed in 1991 or 1992. 
Brooks testified to a few spills or leaks which he believed occurred in 1989. However, Brooks
admitted on cross-examination that he had no documentation of these spills that he thought
occurred in 1989 and conceded that all the documentation he possessed concerned spills or leaks
in later years.

 Lehndorff presented evidence in its case-in-chief that the spills or leaks that Brooks
pointed out had been remedied to the satisfaction of the Texas Railroad Commission. Lehndorff
also presented expert testimony that nothing further was needed to restore the surface estate of the
BUL and that the land was in the process of healing itself and should be left alone.

 Based upon the above evidence, the jury was well within its zone of discretion in
finding that zero dollars were necessary to clean up or restore the land. There is significant
evidence to support the finding, and the finding is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Therefore, we hold that the trial court did not err
in rendering judgment based upon the jury's finding because the verdict was supported by legally
and factually sufficient evidence. Accordingly, Brooks is not entitled to any damages for harm
to the surface estate covered by the BUL.

 Finally, we consider attorneys' fees. A party is entitled to attorney's fees in a
breach of contract case only if it recovers on a valid claim. Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8) (West 1986); Sikes v. Zuloaga, 830 S.W.2d 752, 753 (Tex. App.--Austin 1992, no
writ). We have held that Brooks is not entitled to damages on either of his claims. Because
Brooks has not recovered on a valid claim, we hold that he is not entitled to an award of
attorney's fees.



CONCLUSION

 We reverse the judgment of the trial court and render judgment that appellant Larry
Brooks and the other trial-court plaintiffs--William White Brooks, and Lillian Clifton Brooks, as
independent executrix of the estate of Clifton B. Brooks--take nothing.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Reversed and Rendered

Filed: February 21, 1996

Do Not Publish
1.   The remaining appellees are the partners of the partnership: LGB Minerals, Inc.,
f/k/a Lehndorff/LGB Minerals, Inc.; Lehndorff Minerals VIII, Ltd.; Lawrence Five
State, Ltd., f/k/a Lehndorff-Lawrence Five State, Ltd.; M.S. Holdings, Ltd.; NEGP,
Inc.; KS Properties Ltd.; Franz Carl Weber U.S.A., Inc.; Valor, Ltd.; K.S. Properties;
Erwin Schmid; and Susanne Schneider. For the sake of simplicity we will refer to the
partnership and partners collectively as "Lehndorff." 
2.   The plaintiffs in the trial court were appellant Larry Brooks, William White
Brooks, and Lillian Clifton Brooks as independent executrix of the estate of Clifton B.
Brooks. We will refer to the trial-court plaintiffs collectively as "Brooks." 
3.   Brooks also sued Lawrence but dropped it from the suit after it filed bankruptcy.
4.   Although we refer to appellees collectively as "Lehndorff" for the sake of
convenience, we note that only the partnership took the assignment of the working
interest in the Brooks Unit Lease.
5.   Lehndorff and Lawrence executed the reassignment on March 14, 1990, but
backdated it to December 1, 1989.
6.   Lehndorff argued that the backdating of the reassignment to December 1, 1989 was
effective, so that the March 14, 1990 execution date did not control.
7.   Although federal authority is not binding on this Court, we find it persuasive on this
issue.
8.   See Waggoner v. Edwards, 83 S.W.2d 386, 388 (Tex. Civ. App.--Amarillo 1935, writ
ref'd); Stark v. American Nat'l Bank, 100 S.W.2d 208, 211-12 (Tex. Civ. App.--Beaumont
1936, writ ref'd).



he believed occurred in 1989. However, Brooks
admitted on cross-examination that he had no documentation of these spills that he thought
occurred in 1989 and conceded that all the documentation he possessed concerned spills or leaks
in later years.

 Lehndorff presented evidence in its case-in-chief that the spills or leaks that Brooks
pointed out had been remedied to the satisfaction of the Texas Railroad Commission. Lehndorff
also presented expert testimony that nothing further was needed to restore the surface estate of the
BUL and that the land was in the process of healing itself and should be left alone.

 Based upon the above evidence, the jury was well within its zone of discretion in
finding that zero dollars were necessary to clean up or restore the land. There is significant
evidence to support the finding, and the finding is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Therefore, we hold that the trial court did not err
in rendering judgment based upon the jury's finding because the verdict was supported by legally
and factually sufficient evidence. Accordingly, Brooks is not entitled to any damages for harm
to the surface estate covered by the BUL.

 Finally, we consider attorneys' fees. A party is entitled to attorney's fees in a
breach of contract case only if it recovers on a valid claim. Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8) (West 1986); Sikes v. Zuloaga, 830 S.W.2d 752, 753 (Tex. App.--Austin 1992, no
writ). We have held that Brooks is not entitled to damages on either of his claims. Because
Brooks has not recovered on a valid claim, we hold that he is not entitled to an award of
attorney's fees.



CONCLUSION

 We reverse the judgment of the trial court and render judgment that appellant Larry
Brooks and the other trial-court plaintiffs--William White Brooks, and Lillian Clifton Brooks, as
independent executrix of the estate of Clifton B. Brooks--take nothing.